EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Appellant,

v.

GILBARCO, INC., Appellee.

No. 78–1661.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 4, 1979.

Decided Jan. 9, 1980.

---

Daniel M. Shea, Atlanta, Ga. (David B. Adcock, Dan T. Carter, Smith, Currie & Hancock, Atlanta, Ga., Thornton H. Brooks, Brooks, Pierce, McLendon, Humphrey & Leonard, Greensboro, N. C., on brief), for appellee.

Before HALL, PHILLIPS and MURNAGHAN, Circuit Judges.

K. K. HALL, Circuit Judge:

The primary question on this appeal is whether an age discrimination suit brought by the Secretary of Labor under the authority of § 17 of the Fair Labor Standards Act is effectively commenced, for statute of limitations purposes, with the filing of a complaint which does not name the aggrieved individuals. We believe that a § 17 action is commenced for all purposes when the complaint is filed, regardless of whether the individuals are named in it. Accordingly, we vacate the order of the district court granting summary judgment for defendant on the Secretary's § 17 claim, and remand this case for further proceedings.

I.

■ In enacting the Age Discrimination in Employment Act of 1967 [ADEA], 29 U.S.C. §§ 621–634, Congress created an enforcement scheme which is "something of a hybrid", *Lorillard v. Pons*, 434 U.S. 575, 98 S.Ct. 866, 869, 55 L.Ed.2d 40 (1978), combining features of several other federal statutes.[1] Judicial enforcement of the Act's

Lois G. Williams, Washington, D. C. (Carin Ann Clauss, Sol. of Labor, Donald S. Shire, Associate Sol., Anna K. Holmberg, Gregory O'Duden, Washington, D. C., on brief), for appellant.

1. The statutes of limitations contained in § 6 of the Portal-to-Portal Pay Act of 1947, 29 U.S.C. § 255, apply to ADEA actions, and establish a three-year limitation period for willful violations and a two-year period for other violations. The ADEA includes some provisions patterned after Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–1 *et seq.*, including a requirement that the Secretary attempt conciliation before litigation is begun, and a provision mandating utilization of available state remedies.

*See Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979).

Although litigation under the ADEA is generally governed by provisions of the Fair Labor Standards Act, Congress made several express modifications in incorporating the FLSA enforcement provisions. The criminal sanctions applicable to willful violations of the FLSA, § 16(a), 29 U.S.C. § 216(a), for example, do not apply to ADEA violations. ADEA § 7(b), 29 U.S.C. § 626(b). However, the ADEA's provisions for civil actions are significantly broader than those of the FLSA. The remedy in FLSA actions brought by the Secretary or by individuals under § 16 of that Act is limited to the legal relief of an award of unpaid wages due plus an equal sum as "liquidated damages." Injunctive relief under the FLSA may be obtained only in an action brought under § 17, and only the Secretary is authorized to bring such an action. FLSA § 11(a), 29 U.S.C. § 211(a). Under the ADEA, the court may grant legal or equitable relief in any action brought to enforce the statute's provisions. ADEA § 7, 29 U.S.C. § 626.

provisions is generally governed by the enforcement provisions of the Fair Labor Standards Act [FLSA], with some modifications:

Sec. 7.(b) The provisions of this Act shall be enforced in accordance with the powers, remedies, and procedures provided in sections 11(b), 16 (except for subsection (a) thereof), and 17 of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. §§ 211(b), 216, 217), and subsection (c) of this section. . . . Amounts owing to a person as a result of a violation of this Act shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 16 and 17 of the Fair Labor Standards Act . . . : *Provided,* That liquidated damages shall be payable only in cases of willful violations of this Act. In any action brought to enforce this Act the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this Act, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section. . . .

(c) Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this Act: *Provided,* That the right of any person to bring such action shall terminate upon the commencement of an action by the Secretary to enforce the right of such employee under this Act. ADEA § 7, 29 U.S.C. § 626.

Two of the incorporated Fair Labor Standards Act sections, FLSA §§ 16(c) and 17, apply to actions brought by the Secretary of Labor on behalf of aggrieved individuals. Section 17 authorizes the Secretary to seek injunctive relief to restrain violations of the Act, including:

the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this chapter (*except sums which employees are barred from recovering, at the time of the commencement of the action to restrain the violations,* by virtue of [the applicable statute of limitations]).

FLSA § 17, 29 U.S.C. § 217 (emphasis supplied). Section 16(c) also authorizes the Secretary to sue on behalf of individual employees to recover sums due them, and under this section an employee may be awarded "an additional equal amount as liquidated damages." However, an action under § 16(c) is subject to a unique definition of "commencement":

. . . In determining when an action is commenced by the Secretary of Labor under this subsection for the purposes of the statutes of limitations . . ., it shall be considered to be commenced in the case of any individual claimant on the date when the complaint is filed if he is specifically named as a party plaintiff in the complaint, or if his name did not so appear, on the subsequent date on which his name is added as a party plaintiff in such action. FLSA § 16(c), 29 U.S.C. § 216(c).

The primary question in this case is whether this special definition of commencement of an action, or some variation of it, applies in an age discrimination case seeking back pay for individuals, brought by the Secretary under § 17 alone.

## II.

The complaint in this action was filed by the Secretary on February 11, 1976, and sought broad injunctive relief, including both restraint of future violations of the ADEA and the "restraint of any withholding" of sums due to individuals as a result of past violations, all as authorized under FLSA § 17. The complaint also sought liquidated damages, available only under

---

The explicit manner in which Congress modified existing statutory provisions which were incorporated into the ADEA indicates that the courts should not infer additional modifications. *Lorillard v. Pons*, 434 U.S. 575, 98 S.Ct. 866, 871, 55 L.Ed. 40 (1978).

FLSA § 16(c), for the victims of past discrimination. The alleged victims were not named in the complaint or in any amendments to it, although they were identified during the following months through the use of discovery and pre-trial stipulations. On June 30, 1976, defendant moved for dismissal or summary judgment, contending that the filing of the complaint, without naming the individuals involved, had not served to "commence" the action, and that the statute of limitations on all the individuals' claims had since run.[2]

The district court granted the motion, upon the recommendation of a magistrate, and entered summary judgment for defendant on all claims, including those for prospective injunctive relief. The court reasoned that, by specifying that the ADEA shall be enforced in accordance with the provisions of "sections 11(b), 16 . . ., *and* 17 of the Fair Labor Standards Act" (emphasis supplied), Congress intended that the Secretary comply with the requirements of *both* § 16 and § 17 in any suit brought under the ADEA. Applying the special § 16(c) definition of "commencement" to the Secretary's complaint, the court concluded that the action had never been properly commenced.

We disagree. The "selectivity that Congress exhibited in incorporating provisions and in modifying certain FLSA practices strongly suggests that but for those changes Congress *expressly* made, it intended to incorporate fully the remedies and procedures of the FLSA." *Lorillard v. Pons, supra,* 98 S.Ct. at 871 (emphasis supplied). We are totally unpersuaded that, by utilizing the connective word "and" in the listing of FLSA sections which it incorporated into the ADEA, Congress "expressly" manifested an intent to meld the historically distinct FLSA remedies into one conglomerate action. Further, we are convinced that the usual definition of "commencement", that is, the filing of a complaint, *see* F.R.C.P. 3, applies to an action brought by the Secretary under § 17.

### III.

In enacting the ADEA in 1967, Congress was well aware of the judicial interpretations which had been given to the FLSA sections it was adopting, and is presumed to have incorporated those interpretations as well. *Lorillard v. Pons, supra,* 98 S.Ct. at 870. The pre-1967 interpretations of §§ 16 and 17 were uniform in holding that the two sections provided distinct and alternative remedies, and that the peculiar requirements of § 16 had no application to an action brought under § 17.[3] In particular,

---

2. Of the twenty-five individuals involved in this case, twenty-one had been discharged by defendant between February 28, 1973, and June 1, 1973. One of these was subsequently rehired but was discharged again on January 24, 1975. Of the remaining four employees, one is still employed and the others were discharged on July 1, 1973, March 22, 1974, and February 28, 1975. The complaint alleges that the discharges were willful violations of the ADEA, to which a three-year statute of limitations applies. 29 U.S.C. § 255.

3. In addition to the unusual definition of commencement, which still applies to § 16(c) actions, the 1967 version of § 16(c) contained several restrictions which were deleted in 1974 amendments to the FLSA. These included provisions making the written request of employees a prerequisite to a § 16(c) action by the Secretary, and forbidding the Secretary from bringing suit "in any case involving an issue of law which has not been settled finally by the courts." The courts have consistently rejected

attempts by defendants in FLSA cases to apply these § 16(c) limitations to actions brought by the Secretary under § 17. *E. g., Hodgson v. Wheaton Glass Co.,* 446 F.2d 527 (3d Cir. 1971); *Hodgson v. Ewing,* 451 F.2d 526 (5th Cir. 1971); *Hodgson v. American Can Co.,* 440 F.2d 916 (8th Cir. 1971); *Shultz v. Mistletoe Express Service,* 434 F.2d 1267 (10th Cir. 1970). The view that §§ 16(c) and 17 provided totally distinct remedies was well established by the time the ADEA was enacted. *Wirtz v. Jones,* 340 F.2d 901 (5th Cir. 1965), *Wirtz v. Novinger's, Inc.,* 261 F.Supp. 698 (M.D.Pa.1966); *Wirtz v. English,* 245 F.Supp. 628 (D.Kan.1965); *Wirtz v. Lockhart,* 230 F.Supp. 823 (N.D.Ohio 1964); *Wirtz v. Wimpy,* 48 LC ¶ 31,525 (M.D.Fla. 1963); *Jones v. American Window Cleaning Co.,* 210 F.Supp. 921 (E.D.Va.1962).

Further, Congress itself clearly did not intend for the peculiar § 16(c) requirements to apply to § 17 actions by the Secretary. The 1961 amendments to the FLSA, which first authorized the Secretary to collect unpaid wages in a § 17 action, were enacted specifically to allow

at least two courts had held prior to 1967 that a § 17 complaint did not have to name the individuals on whose behalf the Secretary was proceeding in order to effectively commence the action for statute of limitations purposes. *Wirtz v. Novinger's, Inc.,* 261 F.Supp. 698 (M.D.Pa.1966); *Wirtz v. W. G. Lockhart Construction Co.,* 230 F.Supp. 823 (N.D.Ohio 1964). *See also Wirtz v. Harper Buffing Machine Co.,* 280 F.Supp. 376 (D.Conn.1968), *aff'd as modified,* 18 Wage & Hour Cas. 894 (2d Cir. 1968). We know of no court, before or after 1967, which has ever held to the contrary.

"Commencement of the action" is a term of art with an established common meaning, i.e., the filing of a complaint. " '[W]here words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country, they are presumed to have been used in that sense unless the context compels to the contrary' ". *Lorillard v. Pons, supra,* 98 S.Ct. at 871 (citations omitted).

■ The detailed definition of "commencement" provided in FLSA § 16(c), which is limited by its own terms to an action brought "under this subsection", indicates that where Congress wished to deviate from the common meaning of the term, it did so explicitly. Section 16 is the only provision applicable to the ADEA which distinguishes between the filing of a complaint and the commencement of an action. We find nothing in the language or histories of the ADEA and FLSA to indicate that, in employing this common term in other statutory sections without amplification, Congress intended to vest it with an extraordinary meaning. *Cf. Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 758, 99 S.Ct. 2066, 2073, 60 L.Ed.2d 609 (1979) (under

ADEA § 14(b), 29 U.S.C. § 633(b), "commencement" means the filing of a complaint). We therefore hold that an age discrimination action brought by the Secretary of Labor under the authority of FLSA § 17 is effectively commenced for all purposes with the filing of the complaint, regardless of whether the complaint names the aggrieved individuals.

■ We recognize that, where the Secretary commences an action by filing a complaint which does not identify the individuals whose rights he seeks to enforce, there may be some uncertainty as to whether a particular employee's right to bring a private action has been terminated.[4] However, this potential for uncertainty also exists in FLSA actions,[5] and the paucity of cases dealing with the issue indicates that the problem rarely arises. Any uncertainty which does exist can be eliminated, as it was in this case and has been in FLSA cases, through the use of discovery procedures. *See Hodgson v. Brookhaven General Hospital,* 436 F.2d 719, 722 (5th Cir. 1970); *James v. General Tire & Rubber Co.,* 63 LC ¶ 32,373 (E.D.Va.1970).

## IV.

■ Finally, the district court also held that, by including a claim for liquidated damages in his prayer for relief, the Secretary had elected to proceed under both § 16(c) and § 17, and that the § 16 provisions were therefore applicable to the entire action. The Secretary contends that the action was brought under § 17 alone, and should be judged solely according to the requirements of that section.

■ We do not believe that the request for liquidated damages infected the entire

the Secretary to sue free of the § 16(c) requirement that the employees first request him to do so. S.Rep.No.145, 87th Cong., 1st Sess., reprinted in 1961 U.S.Code Cong. & Admin.News, pp. 1620, 1658.

4. ADEA § 7(c), 29 U.S.C. § 626(c), provides that an individual's right to bring a private action "shall terminate upon the commencement of an action by the Secretary to enforce the right of such employee under this Act."

5. Section 16(b) and (c) provide that private rights of action under the FLSA terminate "upon the filing of a complaint" under either § 16(c) or § 17 by the Secretary of Labor. The § 16(c) identification requirement does not preclude the Secretary from filing a complaint which does not name the individuals, but merely provides that the statute of limitations will continue to run until the employees are named.

action with the special requirements of § 16(c). However, liquidated damages are not available in a suit by the Secretary under § 17. *See* S.Rep.No.145, 87th Cong., 1st Sess., reprinted in 1961 U.S.Code Cong. & Admin.News, pp. 1620, 1659. Therefore, in view of the Secretary's insistence that the action was brought under § 17 only, we believe that the claim for liquidated damages should be denied.[6]

## V.

■ We affirm the judgment of the district court only insofar as it grants judgment for defendant on the liquidated damages claim. Since the claims cognizable in a § 17 action, including those for employment, reinstatement and back pay, were not time barred when the Secretary's complaint was filed, we vacate the district court's grant of summary judgment on these claims, and remand for further proceedings.

AFFIRMED IN PART, VACATED AND REMANDED IN PART.

MURNAGHAN, Circuit Judge, concurring in part and dissenting in part:

The views of my co-panelists and mine are in harmony as to the claims for injunctive relief against future violations, for reinstatement and for liquidated damages. The applicable statute of limitations is restricted to back pay claims and to claims for liquidated damages.[1] As liquidated damages are not recoverable by the Secretary under § 17,[2] the Secretary's flat disavowal of any intent to proceed under § 16(c) of the Fair Labor Standards Act ("FLSA") and the concomitant assertion that the action was brought under § 17 alone disposes of the claim for liquidated damages on other than limitations grounds.[3]

My dissent is limited then to the majority's conclusion that, for purposes of back pay claims on behalf of individual employees, limitations were tolled altogether by the filing of a § 17 complaint by the Secretary, even though no identification whatsoever of the employees involved was made in the complaint, or other paper contemporaneously filed in the case. Under the FLSA, the adoption of certain of whose provisions for purposes of the Age Discrimination in Employment Act ("ADEA") has generated the issue on which my colleagues and I differ, the authority of the Secretary to seek back pay for individual employees in a § 17 action was accorded in 1961. Prior to that time, the statutory scheme provided for back pay recoveries in three different ways, *for each of which the naming of the individual employee in a paper filed with the court was required to toll limitations.*[4]

The 1961 legislative grant of authority to the Secretary to proceed under § 17 to seek an injunction against the withholding of back pay was intended to overcome the consequences of the perceived reluctance of individual employees, who, under the three extant ways of proceeding, had to consent

---

**6.** We express no opinion as to whether the eventual identification of the employees through discovery procedures would have been sufficient to meet the § 16(c) requirements. *See Prickett v. Consolidated Liquidating Corp.*, 197 F.2d 67 (9th Cir. 1952).

**1.** 29 U.S.C. § 255 (1976) (Portal-to-Portal Act § 6).

**2.** *See* Conf.Rep.No.327, 87th Cong., 1st Sess. 19–20 (1961), *reprinted in* [1961] U.S.Code Cong. & Admin.News, pp. 1706, 1713 ("In such actions . . . no award shall be made of any additional amount as liquidated damages.").

**3.** At p. 18 of his Brief, the Secretary states: However, the Secretary has repeatedly asserted, and it is unmistakably clear from the jurisdictional statements in Paragraph I(a) of the

complaint, that this action was brought pursuant to Section 17 alone (A. 12). Section 16(c) is mentioned only in conjunction with the request for liquidated damages in the prayer for relief (A. 14). It is well established pursuant to Fed.R.Civ.P. 54(c) that the prayer for relief constitutes no part of a cause of action and that a party may be granted any relief to which the facts of the case prove he is entitled, irrespective of the contents of the prayer.

**4.** The three ways are described in detail later in this opinion. They were (i) an individual's action on his own behalf under § 16(b), (ii) a representative, class or collective action for a number of employees under § 16(b), and (iii) a suit on behalf of a number of employees by the Secretary under § 16(c).

to suits to recover back pay for them. In allowing a recovery even absent such consent, Congress intended to deal only with the remedy, the route for recovery of back pay, not with the right to back pay itself. Nothing in the 1961 statute nor in the legislative history constitutes an indication of congressional intent to disturb the existing uniform scheme under the FLSA that guaranteed an employer identification, before the applicable limitations period had expired, of any employee or employees for whom back pay was being sought. On the contrary, there are sufficient persuasive indications of a legislative purpose in 1961 to maintain the existing requirement for § 17 actions. The requirement that names of employees be named was not abrogated in 1961 for the other three ways of recovering back pay,[5] and language specifically added to § 17 in 1961, correctly read, established that the requirement should apply to an action by the Secretary under § 17. That the FLSA § 17 language so provided is reinforced by the way in which the same phraseology was employed for a related purpose when, in 1967, the ADEA, itself, was adopted.

In such circumstances, it simply cuts against the grain of reason to assume or infer a non-articulated congressional intent to give the Secretary, under § 17, a substantial tactical advantage denied the Secretary himself under § 16(c) and denied individual plaintiffs and class or collective action plaintiffs under § 16(b). The tactical advantage would indeed be a large one, enabling the Secretary, as plaintiff, to postpone, in extreme cases even up to the time immediately preceding final judgment, revelation to the defendant of what claims he was exposed to, and should be preparing—or should have prepared—to defend against.

The majority's answer that the information can be obtained by diligent discovery on the defendant's part is not a sufficient or satisfactory one. If the complaint is not filed until the last moment before the statute of limitations would have run (which, as here, may be three years after the alleged

violation occurred), even the most rapid discovery will not make the vitally important information available until well after the expiration of the limitations period prescribed by Congress. Congress prescribed that period for the very purpose of protecting defendants against stale claims and against the attendant hardships of witness unavailability, memory dissipation, and record destruction. Furthermore, even after an initial supplying, in response to a defendant's interrogatory, of the names known at the time of filing the complaint, under the result reached by the majority the Secretary will be free subsequently throughout the life of the lawsuit to add names of those who subsequently come to his attention at even more remote points in time.

Of course, an employer which through violating the FLSA or the ADEA has deprived its employees of wages to which they were entitled is not at first blush an engaging object of solicitude. However, the accusation is not the equivalent of proof, and the very obloquy attached to such a designation is a strong reason not to place an employer in the awkward and unfair position where his opportunities to defend against such a charge are lost because undue passage of time has rendered the critical evidence unavailable. By enacting a statute of limitations in the first place, and by further providing, uniformly, that an employee's back pay claim was litigable only if the employer had been notified of the name of the claimant by a statement in the court papers before the limitations period had run, Congress had repeatedly, prior to 1961, indicated an intent that employers should have a fair chance to defend themselves from such serious charges.

It seems unlikely indeed, therefore, that Congress, without explicitly saying so, intended that, of all litigants, an arm of the United States government—a litigant whose vast resources of funds and competent counsel disqualify it for special favors—should have a tactical advantage de-

5. Indeed the requirement continues until today.

...

nied all others authorized by the same statute to seek recovery of back wages. To say that Congress had such an intent, in the absence of clear language to that effect, is to impute irrationality, capriciousness and unconcern for fairness. Such an imputation contradicts both reality and established rules of statutory interpretation.

The ADEA complaint with which we are here concerned was filed by the Secretary on February 11, 1976, seeking relief from Gilbarco with respect to asserted violations of the ADEA occurring in the period February 11, 1973, through February 11, 1976.[6] The complaint as originally filed did not identify the employees whose rights Gilbarco allegedly violated. No amendment to the complaint ever occurred. No written consents of any employees to become parties plaintiff or to authorize suit on their behalf were filed. By way of interrogatory, interrogatory answer and stipulation, at times later than February 11, 1976, the date the complaint was filed, identification of the 25 employees as to whom relief was sought occurred. The significance of those developments can better be appreciated after the legal principles which I contend should apply to them have been established, and elaboration with respect to them is, therefore, deferred.

In the cases of all but one of the 25 employees so identified as those whose rights the Secretary was seeking to enforce, they were terminated by Gilbarco on various dates between February 28, 1973, and February 28, 1975. The one employee whose employment had not been terminated allegedly suffered age discrimination during the specified three year period.

The remedies sought by the Secretary included an injunction against future violations of the ADEA, reinstatement for the discharged employees, injunctive relief against the withholding of back pay for

them and for the employee who had not been discharged, but who also allegedly had suffered discriminatory treatment, and liquidated damages equal to the recoverable back pay as provided for in the applicable statute. As I have indicated, it is only with respect to the disposition of the back pay claim that I am in disagreement with my colleagues.

For an understanding of that issue, a detailed review is required of statutory provisions long antedating 1967, the year the ADEA was enacted. Those provisions which we must consider were expressly incorporated into the ADEA by Congress. Section 7(b) of the ADEA (29 U.S.C. § 626 (1976)) provides:

(b) The provisions of this Act shall be enforced in accordance with the powers, remedies, and procedures provided in sections 11(b), 16 (except for subsection (a) thereof), and 17 of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 211(b), 216, 217), and subsection (c) of this section. Any act prohibited under section 4 of this Act shall be deemed to be a prohibited act under section 15 of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 215). Amounts owing to a person as a result of a violation of this Act shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 16 and 17 of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 216, 217).

Furthermore, ADEA § 7(e)(1) provides that §§ 6 and 10 of the Portal-to-Portal Act of 1947 (29 U.S.C. §§ 255, 259 (1976)) shall apply to actions under the ADEA.[7]

The positions of the parties are altogether divergent. Gilbarco contends that the applicable language governing what is necessary to toll the running of limitations is found in § 16(c) of the FLSA, as incorporated by reference into ADEA, which has not

---

**6.** While the parties are in complete disagreement as to the impact of the statute of limitations on claims arising in that three year period, it is accepted by all that recovery for violations prior to February 11, 1973 is necessarily time-barred because of the provisions of 29 U.S.C. § 255 (1976) (§ 6 of the Portal-to-Portal

Act) creating a two year general limitations bar, increased to three years if the infractions were willful.

**7.** The provisions of § 10 of the Portal-to-Portal Act are not germane to the issue.

been complied with by the Secretary. The Secretary replies that, this being a § 17 action, the filing of the complaint on February 11, 1976 tolled all limitations applicable to the case.

The Secretary's approach to the case is deceptively simple. He argues that the limitations bar found by the district court to exist would not have applied to an FLSA § 17 proceeding instituted under the FLSA proper.[8] The Secretary goes on to cite *Lorillard, a Division of Loew's Theatres, Inc. v. Pons*, 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). The Supreme Court there determined that the manner in which Congress employed incorporation by reference of FLSA provisions into the ADEA evidenced an intent on the part of Congress to assimilate the remedies and procedures of the FLSA into the ADEA, except in those cases (some of which are catalogued by the Supreme Court) where, in the ADEA itself, Congress made plain its decision to follow a different course than that provided for in the FLSA.[9]

Several areas require investigation:

1. Whether the three district court decisions relating to the applicability of limitations to an FLSA § 17 action do, indeed, support the position of the Secretary.

2. Whether, assuming they do, the considerations influencing the courts which decided them are present when a single integrated statute, the ADEA, is being construed, the interpretation of the FLSA in those cases having depended in significant measure on the non-contemporaneous character of the FLSA sections which the defendants in those cases were contending should be interpreted *in pari materia*.

3. Whether provisions of the ADEA do establish that Congress wished to depart to a significant extent, insofar as the precise issue confronting us here is concerned, from powers, remedies and procedures provided in the FLSA, as interpreted by the three district court opinions.

To conduct the investigation properly requires a detailed and somewhat tedious historical description of the evolution of the FLSA from its initial enactment in 1938 through and beyond the enactment of the ADEA in 1967.

*Initial Enactment of the Fair Labor Standards Act in 1938*

As originally promulgated, the Fair Labor Standards Act, by § 16(b), permitted employee suits initiated by (1) the individual employees themselves on their behalf and on behalf of other employees similarly situated or (2) by a designated agent or representative of such employee or employees for all employees similarly situated. To the extent the action was on behalf of others than the named plaintiffs, no consent to the representation was required. Section 16(b) permitted recovery of unpaid wages or overtime and an additional equal amount representing liquidated damages.

Section 17 of the FLSA as enacted in 1938 established jurisdiction in federal districts courts for cause shown, and subject to the provisions of another statute (relating to notice to the opposite party),[10] to restrain

---

8. Three district court decisions reached before or immediately after enactment of ADEA in 1967 so hold: *Wirtz v. W. G. Lockhart Constr. Co.*, 230 F.Supp. 823 (N.D.Ohio 1964); *Wirtz v. Novinger's Inc.*, 261 F.Supp. 698 (M.D.Pa. 1966); *Wirtz v. Harper Buffing Machine Co.*, 280 F.Supp. 376 (D.Conn.1968), *modified, and, as modified, affirmed*, 18 Wage & Hour Cas. 894 (2d Cir. 1968). For reasons hereinafter detailed, those cases did not address, in any fashion, the issue with which this dissent is concerned.

9. For that reason, the Supreme Court in *Lorillard*, in contradiction of at least two lower court decisions, ruled that an individual suing for back pay under the ADEA was entitled to a jury trial, because a jury trial was available under FLSA to an individual plaintiff.

10. "No preliminary injunction shall be issued without notice to the opposite party." This provision for notice became redundant in view of Fed.R.Civ.P. 65, and was deleted from the FLSA in 1949. The significance of the provision is too attenuated to contribute to resolution of the problem here presented. Nevertheless, it is pertinent to observe that it demonstrates a solicitude by Congress that defendants be given adequate notice. It is, therefore, pointed in the direction of the result which this dissent would reach.

substantive violations of the Fair Labor Standards Act. Section 17 was itself silent as to who might resort as plaintiff to the jurisdiction established by it. However, § 11(a) of the 1938 FLSA provided that, with an exception not here pertinent, "the Administrator [11] shall bring all actions under section 217 of this title to restrain violations of this chapter." *Bowe v. Judson C. Burns, Inc.*, 137 F.2d 37, 39 (3d Cir. 1943) early established that the right to seek injunctive relief under § 17 lay exclusively in the government in light of FLSA § 11(a).[12]

### The Portal-to-Portal Act of 1947

Until 1947 no federally created statute of limitations applied under the FLSA. However, employee actions under § 16(b) were held subject to applicable analogous state statutes of limitations.[13]

In 1946 the Supreme Court decided *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), establishing that the prevalent practice of excluding from compensable time the period spent by employees going to and from the entrance to their employer's place of business and their work sites was a violation of the FLSA. Concern in Congress was high that huge awards of back pay and liquidated damages on a portal-to-portal basis would be disruptive of the economy.[14] Consequently, it enacted the Portal-to-Portal Act of 1947, c. 52, §§ 6, 7, 61 Stat. 84 (29 U.S.C. §§ 255, 256 (1976)). The Portal-to-Portal Act established limitations applicable to claims under (a) the Fair Labor Standards Act, (b) the Walsh-Healey Act, 41 U.S.C. §§ 35–45, and (c) the Bacon-Davis Act, 40 U.S.C. §§ 276a to 276a–5. Section

6(a) of the Portal-to-Portal Act stated with respect to any action to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages:

(a) If the cause of action accrues on or after May 14, 1947—may be commenced within 2 years after the cause of action accrued, and every such action shall be forever barred unless commenced within 2 years after the cause of action accrued.

For purposes of definition, § 7 of the Portal-to-Portal Act provided:

In determining when an action is commenced for the purposes of section 255 of this title [i. e. Portal-to-Portal Act § 6], an action commenced on or after May 14, 1947 under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act, shall be considered to be commenced on the date when the complaint is filed; except that in the case of a collective or class action instituted under the Fair Labor Standards Act of 1938, as amended, or the Bacon-Davis Act, it shall be considered to be commenced in the case of any individual claimant—

(a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or

(b) if such written consent was not so filed or if his name did not so appear—on the subsequent date on which such written consent is filed in the court in which the action was commenced.[15]

---

**11.** The Administrator for our purposes is the Secretary of Labor.

**12.** *See Lorillard v. Pons*, 434 U.S. 575, 581, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978).

**13.** *E. g., Republic Pictures Corp. v. Kappler*, 151 F.2d 543 (8th Cir. 1945), *aff'd mem.*, 327 U.S. 757, 66 S.Ct. 523, 90 L.Ed. 991 (1946); *Loggins v. Steel Constr. Co.*, 129 F.2d 118 (5th Cir. 1942). *See generally* Annot. 162 A.L.R. 237 (1946); Annot. 157 A.L.R. 545 (1945).

**14.** *Unexcelled Chemical Corp. v. United States*, 345 U.S. 59, 61–2, 73 S.Ct. 580, 97 L.Ed. 821 (1953).

**15.** For actions already pending on May 14, 1947, § 8 of the Act similarly provided that the newly enacted limitations provisions would apply "to an individual claimant who has not been specifically named as a party plaintiff to the action prior to the expiration of 120 days after May 14, 1947." In such bridging situations for limitations purposes, the Act provided "such action shall be considered to have been commenced as to him when, and only when,

The Portal-to-Portal Act also amended FLSA § 16(b) by adding a requirement reading:

> No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*1949 Amendments to the Fair Labor Standards Act*

The question of interrelationship between employee actions under FLSA § 16(b) and Secretary actions under FLSA § 17 was a source of litigation. The practice arose of initiation by the Secretary of a § 17 action with a subsequent settlement with the defendant employer which included an undertaking to pay back wages to the employees involved. *See Hodgson v. Wheaton Glass Co.*, 446 F.2d 527, 529 (3d Cir. 1971). However, the Second Circuit decided *Rigopoulos v. Kervan*, 140 F.2d 506 (2d Cir. 1943) in a manner which disrupted and brought to a virtual standstill that procedure for obtaining compliance with the objectives of the FLSA. In *Rigopoulos*, it was held that there was no identity of parties as between the Secretary in a § 17 action and employees in a § 16(b) action and that, consequently, a settlement of the § 17 action would not bar, by way of collateral estoppel, a subsequent independent § 16(b) suit in which the employees might recover liquidated damages in amounts equal to the back pay awards as well as the statutorily authorized attorney's fees and costs.[16] As a consequence, employers were unwilling to settle § 17 actions.

There was a related question as to whether the § 17 jurisdiction to restrain violations of the FLSA in fact extended to an order in a suit by the Secretary that the defendant should not withhold back pay. "Some courts took the view that such jurisdiction did not exist; others held that it did."

*Wirtz v. Robert E. Bob Adair, Inc.*, 224 F.Supp. 750, 754 (W.D.Ark.1963). In *McComb v. Frank Scerbo & Sons, Inc.*, 177 F.2d 137 (2d Cir. 1949), it was held that a district court, under § 17, when granting injunctive relief against further violations of the FLSA could additionally make back pay awards for the benefit of the employees who had been adversely affected by past infractions.

Shortly thereafter, Congress enacted the 1949 amendments to the FLSA:

A. A subsection 16(c) was added, providing:

1. Authority in the Secretary to supervise the payment of unpaid wages owing to any employee or employees, with acceptance of such payment by any employee constituting a waiver of the employee's right under subsection 16(b) to sue for back pay or liquidated damages.

2. Authority in the Secretary to sue for back pay on behalf of any employee who had first submitted a written request that the Secretary initiate such an action.

3. A bar, on waiver grounds, to the bringing by any employee of a subsection 16(b) action, if the employee had consented to a subsection 16(c) suit by the Secretary.

4. A restriction on the Secretary's authority to bring such a subsection 16(c) suit precluding his doing so "in any case involving an issue of law which has not been settled finally by the courts."

5. A procedure for determining, for statute of limitations tolling purposes, when a subsection 16(c) action had been commenced:

> In determining when an action is commenced by the Administrator under this subsection for the purposes of the two-year statute of limitations provided in section 255(a) [§ 6(a) of the Portal-to-Portal Act] of this title, it shall be considered

---

his written consent to become a party plaintiff to the action is filed in the court in which the action was brought." 29 U.S.C. § 257 (1976).

**16.** There was no suggestion that the non-identity of the parties would have permitted the employees to recover again the back pay which the Administrator had secured in settlement of his § 17 action. See Learned Hand, C. J., concurring in *McComb v. Frank Scerbo & Sons, Inc.*, 177 F.2d 137, 140 (2d Cir. 1949).

to be commenced in the case of any individual claimant on the date when the complaint is filed if he is specifically named as a party plaintiff in the complaint, or if his name did not so appear, on the subsequent date on which his name is added as a party plaintiff in such action.

B. There was added to § 17 language constituting a legislative reversal of the rule announced in *McComb v. Frank Scerbo & Sons, Inc., supra* :

> *Provided,* That no court shall have jurisdiction, in any action brought by the Administrator to restrain such violations, to order the payment to employees of unpaid minimum wages or unpaid overtime compensation or an additional equal amount as liquidated damages in such action.

Consequently, as of 1949, the statute of limitations was not tolled, either for purposes of § 16(b) or for the purposes of § 16(c), by the filing of an action, unless and until the name of each employee for whom back wages were sought had been identified in the court papers, by formal naming of the employee as a plaintiff or by the filing in the court of the employee's written consent to become a party plaintiff. That result was insured for § 16(b) actions by the provisions of the Portal-to-Portal Act. A single employee bringing suit had, of course, to name himself as plaintiff.

Even in the case of an employee initiating a class or collective action on behalf of himself and others, for him the commencement of the action, for limitations tolling purposes, is defined as "the date when the complaint is filed" because "he is specifically named as a party plaintiff." A group action on behalf of "other employees similarly situated" would not, however, for tolling purposes, be deemed commenced by the mere filing of the complaint. On the contrary, for any employee not named in the complaint or as to whom no written consent had been filed, the action would commence, insofar as tolling of the statute of limitations was concerned, only upon "the subsequent date on which such written consent is filed in the court." [17]

The same result was insured as to § 16(c) because § 16(c) explicitly stated that an action under it was not considered "commenced," insofar as any individual employee was concerned, for purposes of tolling the statute of limitations, until the employee, either originally, or by subsequent amendment, was "specifically named as a party plaintiff." Since no back pay award (sought as such rather than as a sanction for contempt of an injunction earlier entered against future violations) was possible under § 17, no question of tolling for purposes of a back pay claim arose under that section,[18] and there was a uniform, essential

---

17. The action would be commenced for all purposes saving tolling of limitations, however. Section 7 of the Portal-to-Portal Act makes clear that, in determining when an action has been commenced for limitations purposes, it shall be considered commenced, not when the complaint was filed, but only on the subsequent date on which a written consent of the individual employee involved is filed "in the court in which the action *was commenced*" (Emphasis supplied). Such use of words to define themselves would earn condemnation from generations of elementary and secondary school teachers. It makes clear, however, that Congress clearly contemplated the filing of the complaint as the commencement of the action for general purposes, but, solely for limitations tolling purposes, fixed the later date of identification of each employee by writing filed in court as the commencement of the action.

18. The courts were not altogether in agreement as to the applicability of the statute of limitations contained in § 6 of the Portal-to-Portal Act to suits to obtain other relief under FLSA § 17 (essentially requests for injunctions against future violations or petitions for contempt citations because of asserted non-conformity with such a "future violations" injunction). For example, with respect to an allied restriction on recovery, in *Western Union Tel. Co. v. McComb*, 165 F.2d 65, 73 (6th Cir. 1947), *cert. denied*, 333 U.S. 862, 68 S.Ct. 743, 92 L.Ed. 1141 (1948), dealing solely with a future practices injunction, it was held:

> Section 2 of the Portal-to-Portal Act of 1947 has no applicability, for the reason that the Wage and Hour Administrator is not seeking to subject an employer 'to any liability or punishment' under the Fair Labor Standards Act, but is seeking to prevent future violations of the act, which he has a plain right to do.

harmony prevailing under § 16(b), § 16(c) and § 17 on the requirement that, to toll the statute of limitations with respect to any FLSA claim that employees were entitled to back pay, the court papers had specifically to name the employees.

By contrast, there was no such harmony present insofar as the § 16(c) "no novel question of law" limitation was concerned. An employee, if he chose not to consent to the Secretary's suit, could maintain a § 16(b) action and recover back wages even though his theory for establishing liability was, prior to the decision in his case, novel and his basis for recovery had, hence, theretofore been unsettled.[19] Similarly, for the purposes of restraining future violations,

the Secretary could obtain injunctive relief under § 17 against future violations, although his theory for proceeding were novel.[20] Thus, on this aspect of the matter, § 16(b) and § 17 were harmonious; but § 16(c) was expressly discordant.

### 1961 Amendments to the FLSA

Congress was not satisfied with the subsequent developments under the FLSA, as amended in 1949. The requirement that consent of an employee had to be obtained before either a § 16(b) action by another employee or employees or a § 16(c) action by the Secretary could be filed on his behalf, combined with employee reluctance thus to appear to be initiating action

---

Despite the 1949 amendment to § 17 denying jurisdiction to award back pay, courts generally concluded that, where there had been an initial "future violations" injunction obtained in the public interest by the Secretary under § 17 which the employer thereafter violated, an appropriate sanction which might be imposed to purge the civil contempt was an order to pay back wages improperly withheld while the injunction was in force. The reaction of some courts was to hold that such a back pay award for contempt purging purposes was not subject to the limitations provisions of the Portal-to-Portal Act, at all, and could relate to the entire period from the date of the original injunction. *Tobin v. Frost-Arnett Co.*, 34 Lab.Cas. 95,780 (W.D.Tenn.1958), *aff'd per curiam*, 264 F.2d 246 (6th Cir. 1959); *Wirtz v. Ocala Gas Co.*, 336 F.2d 236, 243 (5th Cir. 1964).

However, that view was repudiated in other cases and the two year statute of limitations contained in the Portal-to-Portal Act was held to apply. *Tobin v. Alma Mills*, 92 F.Supp. 728, 734–35 (W.D.S.C.1950), *modified on other grounds rendering the statute of limitations question moot*, 192 F.2d 133, 135 (4th Cir. 1951), *cert. denied*, 343 U.S. 933, 72 S.Ct. 769, 96 L.Ed. 1342 (1952); *Tobin v. Mason & Dixon Lines, Inc.*, 102 F.Supp. 466, 473 (E.D.Tenn. 1951); *cf. Wirtz v. Chase*, 400 F.2d 665, 669 (6th Cir. 1968) (distinguishing *Frost-Arnett Co.* on the grounds of the 1961 amendment to § 17 of the FLSA). These cases evince a recognition that, for FLSA interpretation purposes, uniformity of treatment of back pay claims, even though made under distinct subsections of the act, was an end so desirable that the applicability of language in one subsection to an action under another subsection would be inferred, at least in the absence of an expression of congressional intent that a different result was to be reached. For the cases holding the statute of limitations applicable to a § 17 back pay award, even though no statutory language

made it directly applicable, the date of filing of the petition for a contempt citation was uniformly accepted as the date from which to compute the limitations period.

Since the back pay awards were sought only as sanctions for violations of injunctions against future violations which had been designed to secure public benefits, it would have been unrealistic to regard the payments ordered to purge a civil contempt as ones recovered in a collective or class action for the benefit of the employees. No individual employee could have sued for such a benefit under § 16(b) for himself or for others. Thus, a basis was lacking for any argument that the naming-of-employees provisions of § 7 of the Portal-to-Portal Act were applicable, and it is not surprising that no defendant sought to have limitations computed from a date later than the filing of the petition seeking citation for contempt. This is especially so since the main objective of the defendants was to escape back pay awards for the much longer periods ranging back to the dates of the initial injunctions. Counsel, no doubt prudently, concentrated on the main limitations issue and, if they realized the point existed at all, presumably did not care to risk vitiating the force of their arguments on the major issue by urging, in addition, a lesser, yet even more complicated one. Moreover, it appears that it was the Secretary's practice to name the names of the employees in the petitions for contempt citations, in which case the issue would not have been present in any event. *See Tobin v. Mason & Dixon Lines, Inc., supra*, 102 F.Supp. 466 at 468; *Tobin v. Frost-Arnett Co., supra*, 34 Lab.Cas. at p. 95,782.

**19.** *Hodgson v. Wheaton Glass Co.*, 446 F.2d 527, 533 (3d Cir. 1971).

**20.** *Id.*

against an employer, led to a situation in which there were very few suits under either subsection 16(b) or subsection 16(c). *See Hodgson v. Wheaton Glass Co.,* 446 F.2d 527, 532 (3d Cir. 1971). The remedy which Congress elected was to reverse its 1949 action with respect to § 17 and specifically to permit recovery in a § 17 action for back pay. The amended language of § 17 read:

> The district courts, together with the United States District Court for the District of the Canal Zone, the District Court of the Virgin Islands, and the District Court of Guam shall have jurisdiction, for cause shown, to restrain violations of section 215 of this title, including in the case of violations of section 215(a)(2) of this title the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this chapter (except sums which employees are barred from recovering, *at the time of the commencement of the action* to restrain the violations, by virtue of the provisions of section 255 of this title [§ 6 of the Portal-to-Portal Act]). (Emphasis supplied).

In 1961, the Congress also eliminated the rights of employees to sue under § 16(b) once the Secretary had himself undertaken to sue under § 17. The following language was added to § 16(b):

> The right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate *upon the filing of a complaint* by the Secretary of Labor in

an action under section 217 of this title in which restraint is sought of any further delay in the payment of unpaid minimum wages, or the amount of unpaid overtime compensation, as the case may be, owing to such employee under section 206 or section 207 of this title by an employer liable therefor under the provisions of this subsection. (Emphasis supplied).

At this point in time, an anomalous use of language crept into the FLSA which is on the surface confusing, but which, in the end, contributes materially to the resolution of the question here presented. The cutting off of the right of individual employees to sue under § 16(b) would be accomplished by "the filing of a complaint by the Secretary." This could be achieved even though the complaint of the Secretary made no reference by name to the employee or employees whose back pay claims were the subject of the § 17 action and though no employee consents were filed in the court.[21] Under § 17, however, the tolling of the statute of limitations was to be accomplished not by "the filing of a complaint by the Secretary," but by "the commencement of the action" thereunder. In normal, everyday federal practice, those at the bar and judges would not ordinarily perceive a distinction between "the filing of a complaint" and "the commencement of the action."[22] Here, however, Congress determined in closely related circumstances to use two different terms. It is, therefore, more likely than not that the use of different language indicated a legislative intention to mean different things.[23]

---

**21.** *James v. General Tire & Rubber Co.,* 63 Lab.Cas. 44,354 (E.D.Va.1970). The adequacy of the complaint under the Federal Rules of Civil Procedure would not be brought into question by reason of failure to name the individual employees in the court papers, irrespective of what the consequences might be insofar as tolling or not tolling the statute of limitations was concerned. *Hodgson v. Virginia Baptist Hospital, Inc.,* 482 F.2d 821 (4th Cir. 1973); *Hodgson v. Brookhaven General Hospital,* 436 F.2d 719, 722 (5th Cir. 1970).

**22.** *See* Fed.R.Civ.P. 3 ("A civil action is commenced by filing a complaint with the court.").

**23.** *See, e. g.,* R. Dickerson, The Interpretation and Application of Statutes 224 (1975):

> Because legal documents are for the most part nonemotive, it is presumed that the author's language has been used, not for its artistic or emotional effect, but for its ability to convey ideas. Accordingly, it is presumed that the author has not varied his terminology unless he has changed his meaning, and has not changed his meaning unless he has varied his terminology; that is, that he has committed neither "elegant variation" nor "utraquistic subterfuge." This is the rebuttable presumption of formal consistency.

The presumption of such congressional intent is greatly fortified by the consideration that, both when § 6 of the Portal-to-Portal Act and when § 16(c) of the FLSA were adopted, the only other occasions when limitations on FLSA back pay recoveries were dealt with, the Congress clearly contemplated that, for purposes of determining what court activity would toll the statute of limitations, the "filing of the complaint" and "the commencement of the action" might occur at two different points of time insofar as individual employees were concerned. There might be a "filing of a complaint" which, because it did not list an employee, would not constitute the commencement of the action for limitations tolling purposes insofar as he was concerned. The commencement of the action, although accomplished for all other purposes by the filing of the complaint, would only occur for him, insofar as limitations tolling was concerned, at a later date when his name was in fact identified by a pleading in court.

*The Three District Court Cases Deciding When the Statute of Limitations is Tolled for an FLSA § 17 Back Pay Claim*

Those, then, were the circumstances when *Wirtz v. Lockhart Construction Co.,* 230 F.Supp. 823 (N.D.Ohio 1964), *Wirtz v. Novinger's Inc.,* 261 F.Supp. 698 (M.D.Pa. 1966), and *Wirtz v. Harper Buffing Machine Co.,* 280 F.Supp. 376 (D.Conn.1968), *modified and, as modified, affirmed,* 18 Wage & Hour Cas. 894 (2d Cir. 1968) were decided.

*Lockhart,* a § 17 suit seeking, *inter alia,* back pay awards, was initiated on August 8, 1963, by the filing of the Secretary's complaint. The complaint did not at first identify by name the employees to whom it asserted back pay was due, but on October 22, 1963, it was amended to name each such employee. The only limitations period then applicable being two years, the defendant sought dismissal to the extent that back

pay for the period prior to October 22, 1961 was claimed (i. e. the contention was that back pay for the period August 8, 1961 to October 22, 1961 was time-barred).

*Lockhart* first ruled that, by virtue of the relation back provisions of Fed.R.Civ.P. 15(c), the filing of the original pleading would, following the amendment, operate to toll the running of limitations. With respect, that approach begs the question of whether a § 17 action required the naming of the employees in the court papers to toll the statute. If there were such a condition attached to a § 17 action by language of the FLSA itself, relation back because of the general provisions of the Fed.R.Civ.P. could not prevail against the specific FLSA language.[24] Otherwise, under the approach of the district judge in *Lockhart,* for § 16(b) or § 16(c) the language explicitly delaying tolling until naming of the employees occurs would become entirely nugatory. A complaint filed without the employees named as parties plaintiff and unaccompanied by the requisite written consents of employees could be belatedly amended, after limitations had run, by naming the employees, at any time up to judgment, thereby fully frustrating the manifest purpose of the act. That purpose was to be fair to employer defendants by assuring them notice in the pleadings, prior to the running of the applicable limitations period, as to who the employees were whose back pay claims were being asserted. Rule 15(c) of the Federal Rules of Civil Procedure explicitly recognizes the injustice of relation back in the absence of timely notice by stating that there shall be relation back where the amendment changes the party against whom a claim is asserted if "within the period provided by law for commencing the action against him, the party . . . has received such notice of the institution of the action that he will not be prejudiced in

**24.** *See* 28 U.S.C. § 2072 (1976) ("[The Federal Rules of Civil Procedure] shall not abridge, enlarge or modify any substantive right . . ."); *cf. LaChapelle v. Owens-Illinois, Inc.,* 513 F.2d 286 (5th Cir. 1975) (holding that because FLSA § 16(b) unambiguously set out an "opt-in" type of class action, plaintiffs under the ADEA could not avail themselves of the "opt-out" type of class action provided for in Fed.R.Civ.P. 23).

maintaining his defense on the merits." [25] In another connection, the *Lockhart* opinion itself recognizes that Fed.R.Civ.P. 15(c) application is a generality which gives way where "unique rules regarding the tolling of the statute of limitations are imposed." 230 F.Supp. at 829. [26]

*Lockhart's* major thrust was directed at repelling the contention that, because § 16(c) related to the same sort of claim as a back pay claim under § 17, the language of § 16(c) requiring naming of names should be imported into § 17. Quite correctly, the district court repudiated such an approach, for the very reason that the language was *not* repeated in § 17. The court cited the interpretation aid: "*Expressio unius est exclusio alterius*," and made altogether clear its decision was restricted to a holding that § 16(c) language should not be brought over bodily into § 17. Nothing was said about whether language in § 17, itself, on its own would have directly led to the result the defendant was arguing for. Presumably defendant made no such contention.

The district court in *Lockhart* further buttressed its conclusion that § 16(c)'s language was inapplicable to a § 17 action for back pay by pointing to essential distinctions between the sections, namely, the requirement for the employee's written consent and the prohibition of suits involving unsettled questions of law, both of which appeared in § 16(c), but were not included in § 17. [27]

*Wirtz v. Novinger's Inc.*, 261 F.Supp. 698 (M.D.Pa.1966) involved a § 17 complaint by the Secretary which, from the outset, did name the names of the very 68 employees for whom back pay was sought. Hence, for the specific issue which confronts us, the case provides no authority as to when tolling of the statute begins. The further contention was made that written consents had not been obtained from each employee, so the action under § 7 of the Portal-to-Portal Act had not been "commenced" for purposes of the limitations provisions set out in § 6 of the Portal-to-Portal Act, so the § 6 two year statute had not been tolled.

The district court held that § 7 of the Portal-to-Portal Act only required written consents for purposes of a "collective or class action." It went on to say that an express purpose of the 1961 amendment to § 17 was the elimination of the requirement of written consents from employees. Since § 17 did not require written consents, the conclusion was that a § 17 back pay claim could not be a "collective or class action" for purposes of § 7 of the Portal-to-Portal Act. [28] The court was not holding that, in general, a suit for back pay on behalf of the

**25.** The statutory requirement of naming for purposes of preventing prescription is a determination that an employer will be prejudiced if naming does not take place within the limitations period.

**26.** The court's reliance on Fed.R.Civ.P. 15(c) depended in substantial part on its perception that the defendant was not seriously asserting a right of its own, but rather was "merely raising the pure legal issue regarding the sufficiency of the pleadings to toll the statute of limitations apparently on behalf of an hypothetical employee, so to speak, who has filed a 16(b) suit and whose rights could be preempted by the Secretary of Labor's later filed injunctive suit to collect unpaid wages for all employees." 230 F.Supp. at 830, n. 3.

**27.** In another respect not immediately pertinent, but which is of material importance to another point discussed *infra* in this dissent, the *Lockhart* decision refuted the contention that there was a difference in the rights sought to be enforced in a § 17 back pay action and

§ 16 claims for unpaid wages. The argument was rejected that back pay for the period prior to September 3, 1961, the effective date of the § 17 amendment, could not be recovered. The court held that the rights which a § 17 back pay case sought to enforce were exactly the same as the § 16 rights to unpaid wages. Since only the remedy was changed, and not the right, application of the § 17 language to permit back pay claims for the period prior to September 3, 1961 was proper. *See also Goldberg v. M & K Manufacturing Co.*, 230 F.Supp. 151 (D.Col.1962); *Wirtz v. A. G. Wimpy Co., Inc.*, 48 Lab.Cas. 41,945, 41,948 (M.D.Fla.1963).

**28.** The court said nothing, presumably because the point was never raised, about the salient consideration that the elimination for § 17 purposes of the need for the employee's consent did not do away with the separate need to inform the employer, the serving of which was a secondary objective to which, under § 7 of the Portal-to-Portal Act, the consents were put.

employees brought by the Secretary was not in the nature of a "collective or class action." Rather, the court was merely opining that, insofar as direct application of § 7 of the Portal-to-Portal Act was concerned, the elimination of the necessity of written employee consents made the suit not a collective or class action, irrespective of whether, in the common sense of words, it might be one for other purposes.[29]

The *Novinger's* court did not even allude to the possibility that, *because of language contained in § 17 itself*, the naming of the employees would be required to toll the statute. Much less did it, therefore, address the question of whether, as an interpretive aid, to establish the meaning of language used in § 17, rather than directly, § 7 of the Portal-to-Portal Act had any significance. The question did not arise, no doubt primarily because the naming of names at the very outset, in the complaint as initially filed, eliminated any reason to consider the question.

*Novinger's* also cited *Lockhart* for the eminently sound proposition that the tolling provisions of § 16(c) were not made applicable to § 17. Again in this connection, as in *Lockhart,* the Pennsylvania district court in *Novinger's* did not address the question of whether language in § 17 itself meant that naming of the individual employees in the court papers was necessary to toll limitations.

*Wirtz v. Harper Buffing Machine Co.,* 280 F.Supp. 376 (D.Conn.1968), *modified and, as modified, affirmed,* 18 Wage & Hour Cas. 894 (2d Cir. 1968), considered, in passing, a limitations defense asserted against a § 17 suit for back pay. What the district court wrote on the subject is very brief, and in no way goes beyond what was held in *Lockhart* and *Novinger's Inc.* In particular, no reference was made to the possibility that the matter was controlled by language in § 17 itself:

> Defendants have also argued that the suit is barred by the two year statute of limitations in § 6 of the Portal to Portal Act of 1947, 61 Stat. 84, 29 U.S.C. § 255, because no employee is named as a party plaintiff and written consent to become a party plaintiff is not on file within two years after the cause of action arose. There is no merit to the argument which is also based on a confusion between § 16 and § 17 of the Fair Labor Standards Act similar to that discussed above. *Wirtz v. Novinger's, Inc.,* 261 F.Supp. 698 (M.D.Pa. 1966).[30]

**29.** See, however, Richard F. Richards, *Monetary Awards in Equal Pay Litigation,* 29 Ark.L. Rev. 328, 335 (1975).

Another more direct route to the result reached was available, but was not perceived by the *Novinger's* court, precisely because the defendant did not make the assertion that § 17, *by its own language,* would establish directly a tolling test to determine whether the action was time-barred. The more direct way to establish that § 7 of the Portal-to-Portal Act did not, insofar as limitations tolling was concerned, control an action for back pay under § 17 was to recognize that § 7 was a more general provision for tolling of limitations than was the particular language of § 17 ("except sums which employees are barred from recovering, at the time of the commencement of the action . . . by virtue of the provisions of § 6 of the Portal-to-Portal Act"). As between the two, the particular language, saying nothing about consents, would take precedence, and render the more general legislation inapplicable. *See* 2A Sutherland, Statutes & Statutory Construction 57 (C. D. Sands 4th ed. 1973) ("Where there is inescapable conflict between general terms or provisions of a statute and other terms or provisions therein of a specific nature, the specific will prevail and be given effect over the general.").

The correctness of the proposition is emphasized by considering the tolling language contained in § 16(c) ("in the case of any individual claimant on the date when the complaint is filed if he is specifically named as a party plaintiff in the complaint, or if his name did not so appear, on the subsequent date on which his name is added as a party plaintiff . . ."). Manifestly that § 16(c) language supplants, for tolling purposes, the somewhat different language of § 7 of the Portal-to-Portal Act. The point is that tolling, for § 17 back pay action purposes, is controlled by § 17's own language, not by § 7 of the Portal-to-Portal Act.

**30.** Nothing is said in the opinion as to whether the complaint in its body listed each employee by name, or, if not, when the names of the employees were first specified in court papers. However, an appendix to the opinion sets out the name of each, the amount of back pay due, and the relevant period.

In 1977, long after the 1967 adoption into ADEA of FLSA § 16(b), § 16(c) and § 17, a fourth district court opinion was rendered under FLSA itself, which followed *Lockhart* and *Novinger's*. *Marshall v. Fabric World, Inc.*, 23 Wage & Hour Cas. 414, 422–23 (M.D.Ala.1977). Without any discussion, the district judge simply held that, for a § 17 action, § 16(c)'s requirement that an employee be named as a party to toll the statute of limitations did not apply. The judge recognized that, under § 17, "commencement of the action" by the Secretary would toll the statute, and equated, without further inquiry, "commencement of the action" with "filing of the complaint." [31]

As further buttressing the proposition, which seems altogether correct, that § 16(c)'s language is not to be inserted bodily into § 17 to establish a non-tolling provision not otherwise present in that section, the Secretary relies on authorities holding, for other than limitations purposes, that § 16 and § 17 were not *in pari materia*. Those cases reject arguments (a) that the no novel question provision of § 16(c) should be read into § 17 and (b) that the jury trial available under § 16 should be available in a § 17 back pay action. In reaching the conclusion that the results urged by defendants could not be achieved through use of the interpretive aid which bears the tag "*in pari materia*," the courts have cited the following considerations:

(1) Section 16 relief is legal; § 17 relief is equitable.[32]

(2) The primary purpose of a § 17 action is the vindication of a public right, with the relief in the way of a back pay award incidental or secondary.[33]

(3) A public purpose served by a back pay award is to equalize circumstances between competitors, one of whom pays the wages mandated by the FLSA, the other of whom pays lower, illegal wages.[34]

(4) The statutory scheme consciously restricted the "no novel question" limitation to but one of its relief routes, inten-

---

**31.** One commentator has strayed into the vicinity of the question which confronts us. However, he has failed, as much as the several district judges, to perceive the possible argument that the "commencement of the action" in § 17 might mean something different than "filing of the complaint," with a consequent delay of tolling in a § 17 back pay action until names are named. See Richard F. Richards, *Monetary Awards in Equal Pay Act Litigation*, 29 Ark.L.Rev. 328, 335 (1975).

**32.** *Wirtz v. Robert E. Bob Adair, Inc.*, 224 F.Supp. 750, 755–56 (W.D.Ark.1963) (Of some interest to the question which confronts us, the Secretary's complaint in this § 17 back pay case identified the 8 employees assertedly entitled to back pay); *Wirtz v. Alapaha Yellow Pine Products, Inc.*, 217 F.Supp. 465 (M.D.Ga. 1963); *Wirtz v. Jones*, 340 F.2d 901, 903–04 (5th Cir. 1965) (Again, the complaint sought back pay for "certain employees"; they were specifically named in the complaint. *Wirtz v. Jones*, 50 Lab.Cas. 42,278 (S.D.Miss.1963)).

**33.** *Wirtz v. Robert E. Bob Adair, Inc.*, 224 F.Supp. 750, 756 (W.D.Ark.1963) ("Although the suit filed by the Secretary affects the rights of the employees mentioned in the complaint and although payments to them are sought, the action in the last analysis is not brought by the employees or for their personal benefit, except incidentally. The Secretary is suing for the benefit of the public and to vindicate a public right. The Secretary is seeking to secure future compliance with the law, which is in the public interest, and he is seeking by means of a negative order to compel the defendants to make reparations for alleged past violations of the law, which likewise is in the public interest."); *Wirtz v. Alapaha Yellow Pine Products, Inc.*, 217 F.Supp. 465, 468 (M.D.Ga.1963); *Wirtz v. Jones*, 340 F.2d 901, 903, 904 (5th Cir. 1965); *Wirtz v. A. G. Wimpy Co., Inc.*, 48 Lab.Cas. 41,945, 41,948 (M.D.Fla.1963); *Hodgson v. American Can Co.*, 440 F.2d 916, 921 (8th Cir. 1971) (But note that while, for purposes of denying *in pari materia* status to § 16(c) and § 17, the court approved a statement that a § 17 back pay action is "not merely to enforce an employee's private individual right, rather it was more expansive and expressly designed to 'correct a continuing offense against the public interest,'" the court contradictorily said, with respect to the allowability of interest: "The purpose of the award is to compensate the employees for the loss sustained because of the wrongful withholding of wages"). *Cf. McComb v. Frank Scerbo & Sons, Inc.*, 177 F.2d 137, 138 (2d Cir. 1949).

**34.** *Wirtz v. Jones*, 340 F.2d 901, 905 (5th Cir. 1965); *Hodgson v. Wheaton Glass Co.*, 446 F.2d 527, 535 (3d Cir. 1971).

tionally permitting broader recovery of back pay under the other routes.[35]

(5) Without amplifying reasons: § 17 should be recognized as different from § 16(c).[36]

(6) Prior decisions have so held.[37]

*1966 Amendments to the Portal-to-Portal Act and the FLSA*

Desiring to draw a distinction between common, garden variety violations and willful violations, in 1966 Congress, by Pub.L. No.89–601, § 601, 80 Stat. 830, amended the Portal-to-Portal Act so that § 6(a) read:

If the cause of action accrues on or after the date of enactment of this Act [May 14, 1947]—may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, *except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued* . . .[38]

Because of that amendment, the language in FLSA § 16(c) stating that the tolling of the statute of limitations would occur only upon "commencement of the action" through the naming of each respective employee as a party plaintiff was adjusted so that the reference to "the two-year statute of limitations provided in section 255(a) [§ 6(a) of the Portal-to-Portal Act]" became "the statutes of limitations provided in section 255(a)."

*Limitations Status of the FLSA Immediately Prior to Enactment of ADEA*

For our present purposes, by 1967 two district court cases[39] had rejected arguments that, in a § 17 action, identification,

in a filing with the court, of an individual employee was required in order to toll the running of the statute of limitations with respect to a back pay claim on behalf of the employee. The rejected arguments proceeded on theories of importation into § 17 of § 16(c) and of direct application of § 7 of the Portal-to-Portal Act. However, no attention had been directed—presumably because no defendant had ever asserted the point—to the proposition that § 17, *by its own language*, created a requirement of naming employees to toll limitations.

The unmade argument is, nevertheless, one which possesses considerable merit. We are not here called upon actually to determine how, with it fully considered, the scales would tip in a true FLSA case. It suffices to recognize the extant status of the argument, for it bears directly on the issue which is of importance to us: In what state was the law, when, in 1967, ADEA was adopted, as to what would suffice to toll limitations in a FLSA § 17 action to restrain withholding of back pay?

To set out the elements of the argument is to establish its substantial character:

1. By § 17 itself, the Secretary is barred from recovering back pay for any employee who would himself be time-barred by virtue of the provisions of § 6 of the Portal-to-Portal Act "at the time of the commencement of the action."

2. The intent of Congress in the 1961 amendment to § 17 was to improve the remedy for enforcing the employees' back pay claims, not to create a new right. *Wirtz v. W. G. Lockhart Construction Co.*, 230 F.Supp. 823, 825 (N.D.Ohio 1964) (". . . for this 1961 Amendment to the

---

35. *Hodgson v. Wheaton Glass Co.*, 446 F.2d 527, 532–34 (3d Cir. 1971).

36. *Shultz v. Mistletoe Express Service, Inc.*, 434 F.2d 1267, 1272 (10th Cir. 1970); *but see Hodgson v. Union de Permisionarios Circulo Rojo, S. de R. L.*, 331 F.Supp. 1119, 1121 (S.D. Tex.1971).

37. *Hodgson v. Ewing*, 451 F.2d 526, 530 (5th Cir. 1971); *Hodgson v. Katz & Besthoff, # 38, Inc.*, 365 F.Supp. 1193, 1194–5 (W.D.La.1973).

38. What is italicised was added. The balance remained as enacted in 1947.

39. *Wirtz v. Harper Buffing Machine Co.*, 280 F.Supp. 376 (D.Conn.1968), *modified and, as modified, affirmed*, 18 Wage & Hour Cas. 894 (2d Cir. 1968) was not decided until after the ADEA had been enacted.

Act created merely a new remedy and not a new right . . ."); *Wirtz v. A. G. Wimpy Co., Inc.*, 48 Lab.Cas. 41,945, 41,948 (M.D. Fla.1963) ("The 1961 amendments merely restored the courts' traditional equity jurisdiction to order restitution of monies wrongfully withheld as part of the enforcement remedy. This 1961 change in the statute, being remedial only and not affecting substantive rights and responsibilities under the Act . . ."); *Goldberg v. M & K Manufacturing Co., Inc.*, 230 F.Supp. 151, 152 (D.Col.1962) ("The amendment [to Section 17 of the Act] does not impose any new sanction or create any new right . . . . The 1961 amendment affects the remedy and not the right.").

The cases which seek to exalt the public purpose of the Secretary under § 17, at the expense of his purpose to secure past due compensation for employees, ignore that the public purpose is tied to the *future* prevention consequences to which § 17 actions were restricted between 1949 and 1961, and is not blindly to be translated to a newly authorized § 17 action which was designed to cure past wrongs by securing the very same recovery that an employee could get for himself under § 16(c). Before 1949, for the Second Circuit at least, § 17 conferred the same jurisdiction as to back pay claims that Congress provided in the 1961 amendments. Judge Learned Hand, in concurring in *McComb v. Frank Scerbo & Sons, Inc.*, 177 F.2d 137, 140 (2d Cir. 1949), correctly stressed the identity of the right an individual might seek on his own under § 16(b) and the right the Secretary would be seeking to enforce under § 17:

> Even so, it is a long step to extend the ancient practice of courts of equity to situations in which the claims recovered, as an incident to an injunction, belong to others; and it is an utterly indefensible step, unless he represents the employees in his recovery on their behalf. Moreover, if he does so represent them, I cannot understand on what theory they are not bound by the judgment, like any other persons whose claims are prosecuted by an authorized representative. If employers are to be excepted from the uni-

versally accepted doctrine that a claim once decided is finally decided unless the decision is revoked, I should demand the most inescapable warrant for it in the words used. Indeed, were I among those who find those results unconstitutional, which chance to be deeply repugnant to their personal feelings, I might even invoke the Fifth Amendment; for it seems to me to the last degree oppressive to hold that, after an employer has been put to a trial upon the claims of A, B, C and D, and has either succeeded in proving that he owes them nothing, or less than they demand, he may be later subjected to a series of actions by those very employees upon *those very claims* (Emphasis added).

*Cf. James v. General Tire & Rubber Co.*, 63 Lab.Cas. 44,354, 44,356 (E.D.Va.1970) (referring to a § 17 back pay remedy as creating rights in the employee himself); *Jones v. American Window Cleaning Corp.*, 210 F.Supp. 921, 924 (E.D.Va.1962).

That Congress recognized the essential difference between the pre-1961 § 17 action seeking injunctive relief against *future* violations and the type of § 17 action newly introduced in 1961, which could seek relief for *past* violations is borne out by the language of the contemporaneous 1961 amendment to § 16(b) preempting the right of an employee to sue in his own behalf. Not every § 17 action by the Secretary was to preclude the employee. Rather the preemption was restricted to "an action under § 17 . . . *in which restraint is sought of any further delay in the payment of*" back pay. Similarly, the limitations language added to § 17 in 1961 applied exclusively to the newly authorized back pay claims, not to § 17 relief in general.

The essential identity of the right asserted in a § 17 action by the Secretary for back pay and the right an individual asserts under § 16(b) has further been recognized even in cases where the Secretary's § 17 action seeks back pay, not as the initial relief, but, secondarily, as a sanction for violating an earlier injunction against future violations. As one district judge put it:

However, here, in respect of the restitution of back wages, the proceeding is for the benefit of the employees in an action brought by an official acting in behalf of the United States and the employees.

Admittedly the statute of limitations would apply to any action brought by the employees. What greater right does the party suing have than the party for whose benefit the suit is brought? He must be limited in his recovery to that which the holder of the beneficial interest is entitled to.

*Tobin v. Alma Mills*, 92 F.Supp. 728, 734 (W.D.S.C.1950) *modified on other grounds rendering the statute of limitations point moot*, 192 F.2d 133 (4th Cir. 1951), *cert. denied*, 343 U.S. 933, 72 S.Ct. 769, 96 L.Ed. 1342 (1952). That language was approved and followed in *Tobin v. Mason & Dixon Lines, Inc.*, 102 F.Supp. 466, 473 (E.D.Tenn. 1951), and *Wirtz v. Chase*, 400 F.2d 665, 669 (6th Cir. 1968). In *Chase*, after setting out the language from *Alma Mills* quoted above, the author of the opinion stated: "This makes sense to the writer."

Further evidence that Congress completely equated the scope of the right to back pay recoverable in a legal action under § 16 with the right to back pay in an equitable action under § 17 is to be found in the 1949 amendments by which Congress discontinued § 17 back pay jurisdiction entirely while introducing § 16(c). Congress addressed not the scope of the overall right but the varying extent of the several remedies (complete under § 16(b), partial under § 16(c) and abrogated under § 17).

Finally, the supposed different nature of a § 17 action for back pay as being primarily to effectuate broad policy objectives of the Secretary in contrast to actions by individual employees is suspect for another reason. *Shultz v. Mistletoe Express Service, Inc.*, 434 F.2d 1267, 1272–73 (10th Cir. 1970) recognizes that, because § 17 is equitable, the court has the discretionary right to

deny the relief of back pay even when a *prima facie* case is made out, if a weighing of the equities, nevertheless, favors the defendant. In comparing the equities in that case, the court weighed those of the *employees* (not those of the Secretary) against those of the defendant and found that the balance favored the employees. "In the case at bar those considerations favor the employees on whose behalf the Secretary is acting."

3. Congress in 1961 meant to apply the same limitations bars to § 17 actions for back pay as would apply to any § 16(b) action which the § 17 action would not merely substitute for, but fully supplant. *Hodgson v. Wheaton Glass Co.*, 446 F.2d 527, 532 (3d Cir. 1971):

The effect of the amendment of § 17 is to restore fully the *Scerbo* remedy, but to make that remedy subject to the statute of limitations which would be applicable to an employee's suit at law.

In *Wirtz v. Chase*, 400 F.2d 665, 669 (6th Cir. 1968), the court extended the limitations language added to § 17 in 1961 to back pay claims related to periods subsequent to the time the suit was initiated and, hence, not literally within the language:

We assume that this exception has specifically to do only with money unpaid and owing to employees at the time the injunction action is commenced. It does, however, evidence Congressional purpose to forbid the Secretary from employing an equitable proceeding to collect stale claims that otherwise would be barred.

4. What is said about limitations themselves applies with equal force to provisions as to what is required in the way of court activity to toll limitations. It is inherently unreasonable to conclude—and courts do not and should not, when there is a choice, conclude—that legislation intended an unreasonable result.[40] It would be unreasonable to ascribe to Congress an intention, with one hand, to keep the substantive results the same by making the same limitations bar applicable, and, with the other,

---

**40.** *See* 2A Sutherland, *supra*, n.29, at 37 ("It has been called a golden rule of statutory interpretation that unreasonableness of the result . . . . is reason for rejecting that interpretation in favor of another that would produce a reasonable result.").

altogether to destroy any such equality by providing for tolling of the statute of limitations for § 17 purposes in a manner much more inequitable to employers than the method for tolling (naming of employees' names) applicable to a § 16(b) action. As *Wheaton Glass Co.* puts it, 446 F.2d at 533:

> Of course the same considerations of fairness apply with even greater force when the Secretary proposes to act as a collection agency for many employees against an employer for liability innocently incurred.[41]

5. The use in 1961 of "the commencement of the action" as the event to toll limitations for purposes of a § 17 back pay claim was completely contemporaneous with the amendment of § 16(b), in the very same legislative enactment, to cut off

rights of employees to sue for back pay "*upon the filing of a complaint* by the Secretary of Labor in an action under § 17 in which restraint is sought of any further delay in the payment of" back wages. Here there can be no doubt that the two sections are intimately interconnected, are *in pari materia.*[42]

If so, it can hardly have been the intention of Congress to mean exactly the same thing by "the commencement of the action" in § 17 and "the filing of a complaint" in § 16(b). When different words are used in statutory enactments which are *in pari materia*, under circumstances such as are present here, the probability is strong that different things are meant.[43]

Of the two phrases, one "the filing of a complaint," clearly occupies the "earlier in

---

**41.** Those comments were addressed to the "no novel question" requirement of § 16(c). The court went on to say that, such considerations of fairness notwithstanding, there was nothing on the face of § 17 to show that Congress had determined to impose the "no novel question" restriction on a § 17 back pay recovery. The court found the difference anomalous, but said remediation was the responsibility of Congress, not of the courts.

Here, in stark contrast, on the face of § 17 there is an indication that Congress wanted the same result under § 16(b) and § 17 rather than an anomalous difference. Section 17 refers to "commencement of the action" as the event which would toll the statute. For both other remedial sections, § 16(b) and § 16(c), "commencement of the action" is also the tolling event. In each of them "commencement of the action" means identification to the defendant by a paper filed in court of the particular employees whose claims are being asserted. It is altogether reasonable that "commencement of the action" means the same thing in § 17. It would approach unreasonableness very closely were it to be held that the phrase means different things for § 16(b) and § 16(c), on the one hand, and for § 17, on the other.

Furthermore, we not only have something on the face of § 17; we also have a double anomaly, one as to § 16(b), another as to § 16(c). The anomaly which engaged the attention of the *Wheaton Glass* court was, at best, only half an anomaly. The "no novel question" restriction in § 16(c) was not repeated in § 16(b) or in § 17. Since the scope of the back pay remedy available under § 16(b) and under § 17 was identical, while, as between § 16(c) and § 17, the scope was different, it made more sense to align § 16(b) and § 17, which the *Wheaton Glass* court did to hold that the "no novel question"

requirement was inapplicable to § 17, than to accept the contrary contention that § 16(c) and § 17 should be aligned. The argument here considered would achieve alignment of all three sections.

**42.** The amendments to §§ 16(b) and 17 appeared together in the Senate amendment to the House bill, neither appeared in the House bill itself, and they were the only two subsections of a single section of the final act itself. *See* Fair Labor Standards Amendments of 1961, Pub.L.No.87–30, § 12, 75 Stat. 65. The relevant reports discuss the provisions as a single, unified change in the law. *See* Conf. Rep.No.327, 87th Cong., 1st Sess. 19–20 (1961), *reprinted in* [1961] U.S.Code Cong. & Admin. News, pp. 1706, 1713–14; S.Rep.No.145, 87th Cong., 1st Sess. 39–40 (1961), *reprinted in* [1961] U.S.Code Cong. & Admin.News, pp. 1620, 1658–59, 1671.

Such circumstances support *in pari materia* treatment for these aspects of §§ 16(b) and 17. *See* 2A Sutherland, *supra* n.29, at 298–99:

> Statutes are considered to be in pari materia—to pertain to the same subject matter—when they relate to the same person or thing, or to the same class of persons or things, or have the same purpose or object.

> . . . [A]pplication of the rule that statutes in pari materia should be construed together is most justified, and light from that source has the greatest probative force, in the case of statutes relating to the same subject matter that were passed . . . on the same day . . .

**43.** *See* note 23 *supra.*

time" position. Hence, where, as here, they, with virtual certainty, mean different things, the other phrase "the commencement of the action," means some point in time later than the filing of the complaint.

6. What point in time was meant by "commencement of the action" in § 17 is not difficult to discover. It is that point in time as of which, for each employee, the employer is put on notice by a paper filed in court that the back pay claim is being made for that employee. This is not because § 7 of the Portal-to-Portal Act is directly applicable to § 17 for purposes of determining when limitations are tolled as to back pay claims. It is not. Rather, in § 17 there is the particular tolling language with which we are concerned which supplants to that extent § 7 of the Portal-to-Portal Act. Nevertheless, the closest place to look for a definition of "the commencement of the action," as that term is used in § 17, is § 7 of the Portal-to-Portal Act. It states that, in the situation where "commencement of the action" and "filing of the complaint" do not mean the same thing—and, for reasons adduced above, they do not mean the same thing here—the action shall be considered commenced as to each individual employee when he is named as a party plaintiff in the complaint or when subsequently a paper is filed in court identifying him as one whose back pay is being sought.

7. In 1966 an FLSA amendment altered the portion of § 16(c) which defined "commencement of the action" for limitations tolling purposes, leaving unchanged the altogether unambiguous definition of the term as applying to a time later than the date of the filing of the complaint whenever the employees are not named as parties plaintiff. While such continuation of the definition in a related context could by no means carry the burden of the argument alone, it is at least consistent with—not contrary to—the definition of "commencement of the action" in § 17 which the argument supports.

44. The action was itself by an individual employee under § 16(b). However, reference is made to a preempting § 17 complaint by the Secretary, filed February 19, 1962, which "spe-

8. The Secretary's own view of things and his practices following the grant of authority in 1961 to seek back pay awards under § 17 are quite instructive. It appears that he, too, at the outset concluded that it was at least unsafe, and probably in conflict with the statute, not to name names in a court paper, if he wanted to toll the running of limitations. In the following FLSA § 17 back pay actions, he filed complaints which from the outset specified the individual employees:

*Jones v. American Window Cleaning Corp.*, 210 F.Supp. 921, 922 (E.D.Va. 1962) [44]

*Wirtz v. Robert E. Bob Adair, Inc.*, 224 F.Supp. 750, 752 (W.D.Ark.1963)

*Wirtz v. A. G. Wimpy Co., Inc.*, 48 Lab. Cas. 41,945, 41,947 (M.D.Fla.1963)

*Wirtz v. Jones*, 340 F.2d 901, 902 (5th Cir. 1965), *see Wirtz v. Jones*, 50 Lab.Cas. 42,278 (S.D.Miss.1963)

*Wirtz v. English*, 245 F.Supp. 628, 630 (D.Kan.1965)

*Wirtz v. Novinger's Inc.*, 261 F.Supp. 698, 699 (M.D.Pa.1966)

In instances where the complaint did not specifically name the employees, the omission was rapidly remedied:

*Wirtz v. Lockhart Construction Co.*, 230 F.Supp. 823 (N.D.Ohio 1964) (complaint filed August 8, 1963; amendment to complaint specifying employees filed October 22, 1963)

*James v. General Tire & Rubber Co.*, 63 Lab.Cas. 44,354 (E.D.Va.1970) (complaint under § 17 filed June 5, 1969; more definite statement identifying employees filed September 5, 1969)

Contemporaneous interpretation by the Secretary of this nature may not be determinative. *See*, however, *Fleming v. Mohawk Wrecking & Lumber Co.*, 331 U.S. 111, 116, 67 S.Ct. 1129, 91 L.Ed. 1375 (1947). Nevertheless, it is consistent with, not in contradiction of, the proposition that naming of

cifically" named "approximately 135 employees, including the plaintiff, . . . as parties for whom a restraint is sought . . .".

names was statutorily required to toll limitations for the purposes of § 17 back pay claims. If the matter was as clear back in 1961 as the Secretary now asserts, it is puzzling why he resorted to the pleading technique of specifying the employees.

### Enactment of the ADEA in 1967

In passing legislation to overcome the evil of discrimination by employers on grounds of age, Congress looked primarily to two existing statutory sources, the Civil Rights Act of 1964, Title VII, 42 U.S.C. §§ 2000e to 2000e–17, and the FLSA. As matters developed there was borrowing from both sources.[45] As earlier indicated, there was incorporation by reference of several sections of the FLSA, namely, §§ 11(b), 16(b), 16(c) and 17. Significantly, § 11(a) was not incorporated by reference. The failure to refer to § 11(a) eliminated the sole basis for the rulings under the FLSA proper that only the Secretary could initiate a § 17 action. Other provisions of the ADEA make quite clear the Congressional intent to allow private individuals to sue under § 17. Subsection 7(b) provides: *"In any action* brought to enforce this act the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this act, . ."* (emphasis supplied). In subsection 7(c) (which by later amendment has become § 7(c)(1) [46]), it was provided that "Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this act . . . ." Coupled with the consideration that the ADEA

did not, in addition to incorporating by reference the detailed descriptions of legal ways of proceeding in FLSA §§ 16(b) and 16(c) and the equitable way of proceeding in § 17, spell out any other ways of proceeding, it seems clear that, by the references in ADEA § 7(b) and § 7(c), Congress contemplated no general, undefined grants of jurisdiction over claims for legal and equitable relief over and beyond those which § 16(b), § 16(c) and § 17 afford. The effect of such unstructured grants of jurisdiction would be essentially to render obsolete the very FLSA sections which Congress was at pains to specify would be available under ADEA. The spelling out of specific remedial provisions generally rules out other forms of proceeding.[47] On that basis, the equitable jurisdiction under § 17 previously available under FLSA to the Secretary alone would for ADEA be available to individual employees as well. The possibility that this could lead to competing suits under § 17, one or more by employees and another by the Secretary, is precluded by the proviso of § 7(c) of the ADEA "That the right of any person to bring such an action [for legal or equitable relief] shall terminate upon the commencement of an action by the Secretary to enforce the right of such employee under this act."

Those ADEA provisions bear very directly on the issue we have before us:

1. Of primary importance is the use of the term "the commencement of an action" to describe what step by the Secretary would cut off the right of an employee to bring his own action. It might, once again,

---

**45.** With respect to Title VII antecedents, see *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979).

**46.** The renumbering occurred in 1978 when § 7(c)(2) was added to accomplish the result which *Lorillard v. Pons*, 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) independently achieved. ADEA § 7(c)(2) reads:

In an action brought under paragraph (1), a person shall be entitled to a trial by jury of any issue of fact in any such action for recovery of amounts owing as a result of a violation of this chapter, regardless of whether equitable relief is sought by any party in such action.

**47.** See, e. g., *Goldman v. First Fed. Sav. & Loan Ass'n of Wilmette*, 518 F.2d 1247, 1250 n.6 (7th Cir. 1975) (Stevens, J.) ("If the statute expressly authorizes proceedings to enforce its provisions . . . , ordinarily it will be inferred that no other means of enforcement . . was intended by the legislature." (citation omitted)).

In fact, legislation where the statute designated a particular remedy for enforcing a right or power which did not previously exist provided the first application of the maxim *expressio unius est exclusio alterius*. 2A Sutherland, *supra*, n.29, at 127.

approached abstractly, mean "the filing of the complaint," or it might mean the point in time when the particular employee has been identified in the court papers by the Secretary as one for whom the Secretary is seeking an award of back pay. One indication that it does not mean the filing of a complaint which does not name names stems from the consideration that the 1961 cut-off inserted into § 16(b) which was to be triggered by the Secretary's proceeding under § 17 was couched in terms of "the filing of a complaint." The apparently conscious choice of different language to accomplish a similar end under ADEA § 7(c) suggests, if it does not fully establish, a congressional intention to mean something else, especially since the alternative phrase chosen, "commencement of an action" had been assigned, under FLSA a well-defined different meaning.

Even more important, use of "filing of a complaint" as the cut-off had brought about under FLSA, and would bring about under ADEA, a very unsatisfactory situation insofar as employees desirous of pursuing back pay claims are concerned. The filing of a § 17 back pay complaint by the Secretary unspecific as to names would leave an employee in an ambiguous position. He could not know whether the Secretary meant to include him as one for whom the claims to back pay would be advanced. If it later turned out that the employee was not included, the statute of limitations would have been running, to foreclose an individual suit; yet the employee could not take the only step available to him to toll the statute. For he would be precluded from filing suit by the unspecific complaint filed by the Secretary.[48]

Obviously, it would constitute a more acceptable, fairer statutory scheme to defer preemption by the Secretary until such time as he had demonstrated that his § 17 complaint was brought on behalf of the employee. That demonstration would come with the employee's naming by the Secretary in court papers. Congress thus has expressed an intent, in the ADEA, to defer the cut-off until the employee is named. In achieving the elimination of a mischievous anomaly, it has used "commencement of the action" to indicate that the point in time it had in mind was when the employee was identified in the Secretary's § 17 action. Congress has done so without the explicit spelling out that "commencement of the action" means naming of names which appeared the first two times it was so used: In 1947 in § 7 of the Portal-to-Portal Act, and in 1949 in FLSA § 16(c). That in 1967 Congress did not regard it as necessary to define yet again "commencement of the action" is strongly indicative that such was the case also in 1961 when a tolling provision couched in terms of commencement of the action was inserted into § 17. .

2. The ADEA extension to individual employees of the right to seek directly equitable relief highlights the proposition that there are not, insofar as back pay relief is concerned, any antagonisms between § 16(b) and § 17. For purposes of the ADEA, the phrases "commencement of the action" appearing in § 16(b) (through § 6 of the Portal-to-Portal Act), in § 16(c) and in § 17 were enacted contemporaneously in 1967, and *in pari materia* status is even more compellingly present than when it is contended that employment of the same phrase in different sections in 1949 and 1961 evidences an intention to mean the same thing.

3. The arguments under the FLSA proper based on the contention that the Secretary's objectives in seeking back pay under § 17 are different from those of the employees themselves, embued with a public interest and only secondarily related to benefit for the employees, have never been convincing in light of the authorities cited earlier. With ADEA, the arguments lose any semblance of validity, because ADEA § 7(c) specifically refers to a § 17 action by the Secretary to achieve a back pay award as "an action to enforce *the right of such employee under this Act.*" So a difference in substantive result, under the ADEA, depending on whether back pay was sought

48. *James v. General Tire & Rubber Co.*, 63 Lab.Cas. 44,354, 44,355 (E.D.Va.1970).

under § 16(b) or under § 17 could hardly have been intended by Congress. The permission of individual employee actions under § 17 only heightens the inevitability of the conclusion that the character of the back pay claim is constant, regardless of whether the plaintiff is the employee himself or the Secretary suing on his behalf.[49]

Even if, under FLSA, there is some vestigial basis for asserting that a claim by the Secretary under § 17 is designed to correct generalized, company-wide underpayment practices, and not merely to recover for individual employees, such an argument has little weight for ADEA. Age discrimination is much more inherently personalized to individuals, not so much a matter of pattern and practice. *Cf. Laugesen v. Anaconda Co.,* 510 F.2d 307, 312, n.4 (6th Cir. 1975).

In the tangled skein which we are attempting to unravel, it is not surprising to find at least one matted group of threads which appears to contradict the conclusion towards which matters have otherwise been tending. Such a contrary consideration is provided by the failure of Congress in 1967 to incorporate § 7 of the Portal-to-Portal Act into ADEA. *See Morelock v. NCR Corp.,* 586 F.2d 1096, 1103 (6th Cir. 1978), *cert. denied,* 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979). At the same time, it did incorporate § 6 of the Portal-to-Portal Act. However, we need not decide, for present purposes whether, as a consequence of that omission, the definition of "commencement of the action" for purposes of § 6 of the Portal-to-Portal Act was intentionally altered, so that it would, insofar as tolling of limitations is concerned, continue to mean one thing for FLSA purposes, Walsh-Healey Act purposes and Bacon-Davis Act purposes and mean something quite different for ADEA purposes. It might well be possible that adoption of § 6 was sufficient to carry the definitional gloss of the words contained in it, even though the lexicographical source was not picked up too. Congress does not have specifically to mention standard reference dictionaries as pertinent to its legislative enactments, and perhaps such mention of other sources of meaning is not necessary.

But that is a matter for another day, when the question concerns what serves to toll the statute of limitations for purposes of § 16(b), as incorporated into the ADEA. We have before us the issue of what tolls the running of limitations for purposes of § 17, as incorporated into the ADEA. For those purposes, I turn to § 7 of the Portal-to-Portal Act not to apply it directly, nor even to conform the pertinent wording in § 17 to its exact language. Rather I consult § 7 as one would consult a dictionary, and find that there, as well as generally, in the statutory area in which we find ourselves, Congress, for determining when tolling of limitations begins, has intended "commencement of the action" to mean not "the filing of the complaint" but the point in time when, as to each individual employee, he is identified in a paper filed in court by the plaintiff.[50]

**49.** Under FLSA, another supposed ground for difference which was advanced as a reason not to treat § 16 and § 17 *in pari materia* derived from the public interest of the Secretary in preventing competitive advantage to an employer who, illegally paying inadequate wages, was incurring lower costs than someone else in the same business who was abiding by the law. Such competitive inequalities are inevitable with violations of FLSA, which is concerned with rate of pay. They are not necessarily present where there is age discrimination, such as alleged here, with older employees replaced with younger ones. The amount paid to the replacements may equal or exceed what the discharged employees had been earning. Nothing guarantees that the rate of productivity of the replacement will be superior to that of the discharged older worker. The thrust behind ADEA proceeds from the opposite assumption.

**50.** It is not captious thus to give some effect to Portal-to-Portal Act § 7, even though it definitely was not incorporated into the ADEA, while elsewhere, to demonstrate a distinctly different congressional purpose, relying on the failure to adopt by reference into the ADEA § 11(a) of the FLSA. The resort to one non-incorporated section as a definitional source for words which were incorporated by reference and to which, in the FLSA, the section had a close affinity, does not conflict with a recognition that another non-incorporated section can have no direct operational significance.

*The Proper Rule As to What Constitutes Tolling of Limitations for Purposes of a § 17 Back Pay Claim Under the ADEA*

Thus, as I end my odyssey through the statutory Mediterranean bordering the FLSA and ADEA shores, I conclude that, for purposes of § 17 of the FLSA, as incorporated into ADEA in 1967, tolling of limitations, insofar as a suit by the Secretary to recover back pay is concerned, occurs, as to each employee, only when his name first appears in a paper filed with the court by the Secretary.[51] Reading ADEA § 7(c)(1) *in pari materia* with FLSA § 17, as it was contemporaneously incorporated into ADEA, leads to the conclusion that for limitations tolling purposes in § 17 back pay actions, "commencement of the action" means as to each individual employee, the point in time when he is named by the Secretary in a court paper. While it would

seem that, for FLSA purposes also, § 17 could be so interpreted to achieve harmony with § 16(b) (as it is supplemented by § 6 and § 7 of the Portal-to-Portal Act) and § 16(c), that question is not before us, and I, therefore, do not reach it.

Against my loquaciously and laboriously arrived at conclusion, the majority puts forth the succinct proposition that the matter should be resolved on the basis of two district court opinions which had held, for FLSA § 17 purposes, that naming of employees in the court papers was not necessary to toll limitations. The majority opinion states, though I have located no legislative history to support the statement, that those judicial interpretations were ones of which Congress was "well aware" when, in 1967, it enacted the ADEA. The majority seeks to extend to the situation with which we are confronted the presumption of

---

**51.** A question with which we need not concern ourselves for these purposes is the relevance, if any, of post-1967 amendments to FLSA, not directly to § 17, but to other sections which, on *in pari materia* grounds, might make a difference for purposes of construing the 1967 ADEA language. The ADEA, in 1967, incorporated the FLSA sections "as amended." Pub.L.No. 90–202, § 7(b), 81 Stat. 602 (1967). Yet, that might have been a reference to prior amendments, not extending to subsequent ones. *Cf.* however, the 1938 incorporation by reference into FLSA, c. 676, § 17, 52 Stat. 1060 (1938), of § 20 of the Clayton Act, "as amended," when no intervening amendments since original enactment had occurred. The parties, as the case was presented to us, set forth and referred to the language of the FLSA sections with which the case concerns itself in their post-1967 amended forms. Yet, even if ADEA automatically incorporates post-1967 amendments to FLSA sections which in 1967 were picked up as components of ADEA, it by no means necessarily follows that such new components collaterally alter the meaning of other pre-existing ADEA language.

The reason the question need not be answered is that the post-1967 FLSA amendments further consolidate, rather than contradict, the conclusion independently reached as to the statutory meaning as of 1967. The amendments need not assist decision. They merely confirm that the calculation of the projected course of the comet was correct, for Congress has given further indications that the several remedial sections are designed to achieve identical, not varying, results insofar as recovery of back pay is concerned.

In 1974, FLSA § 16(c) was amended (Pub.L.No. 93–259, § 26, 88 Stat. 55):

(a) To permit the Secretary to seek liquidated damages, a remedy theretofore available only to employees under § 16(b).

(b) To eliminate the "no novel question" restriction theretofore peculiar to § 16(c).

(c) To do away with the condition of employee consents, never imposed for § 17.

(d) To continue the statutory scheme designed to prevent contemporaneous suits by both the employee under § 16(b) and the Secretary under § 16(c) for back pay (and pendent liquidated damages), a scheme which theretofore had been maintained by the consents requirement, by terminating the § 16(b) rights of employees to sue upon "the filing of a complaint" by the Secretary under § 16(c).

In thereby insuring for the FLSA harmony as between § 16(b) and § 16(c) as to what is the cut-off date, Congress again demonstrated that it appreciated the difference between "commencement of the action" and "filing of a complaint," as descriptions of the point in time at which the cut-off would occur. This is particularly true here, for the amended § 16(c) continued to spell out that, although "filing of the complaint" by the Secretary would cut off the rights of the employees themselves to sue, the controlling event, for statute of limitations tolling purposes, would, nevertheless, be something other than filing of the complaint, i. e. "commencement of the action" by naming of the individual employees as parties plaintiff.

awareness relied on in *Lorillard v. Pons.* *Lorillard,* however, concerned a matter that "long before Congress enacted the ADEA . . . was well established," namely "that there was a right to a jury trial in private actions pursuant to the FLSA." 434 U.S. at 580, 98 S.Ct. at 870. The Supreme Court based its assumption of awareness on the part of Congress as to what the courts had been doing in interpreting the FLSA on the fact "that courts had *uniformly* afforded jury trials under the FLSA" (emphasis supplied). *Id.* at 585, 98 S.Ct. at 873.

With all respect, I am not prepared to accept that by 1967 even the principle for which the two district court decisions in *Lockhart* and *Novinger's* truly stand (that the § 16(c) naming requirement was not to be imported bodily in § 17) was *judicially* well-established. Far less can it be said that they had established a principle which they never discussed, much less announced. The principle for which those cases in fact stand, namely that the language of § 16(c) does not create for § 17 a requirement to name names to toll the statute of limitations, was already *independently well established* by virtue of the complete unambiguity of the language of the statute alone, and I have no quarrel with the results of those cases. It is not right to say, however, that they in any way stand for the broader proposition, for which the majority cites them, that nothing in the FLSA, and particularly nothing in § 17 itself, creates a need to specify individual employees to toll the statute of limitations for purposes of a § 17 back pay action. That was never argued before the *Lockhart* and *Novinger's* courts. It could not have been argued in *Novinger's,* where the employees were listed in the original complaint. It could barely have been argued in *Lockhart,* and then only with respect to the back pay attributable to a short period of less than eleven weeks measured by the interval between original filing of the complaint and an amendment naming the employees. The *Lockhart* court made clear that the argument was not asserted by the employer, whom the court described as raising the limitations point

not on its own behalf but simply to protect the hypothetical right of employees still to be able to bring a § 16(b) action until their names had been identified in the court papers by the Secretary in his § 17 action.

In short, those two cases are no authority, one way or the other, as to what was established, when ADEA was enacted in 1967, on the issue of whether § 17 itself required naming to accomplish tolling. The only thing, apart from the statutory language itself, which demonstrated what was "established," was the general disposition of the Secretary to specify employees in his complaints seeking back pay under § 17. So contrary to the result of the majority, both the statute itself and the Secretary's behavior support my conclusion that naming was required to accomplish tolling.

In the circumstances, it is inappropriate to apply the principle of *Lorillard v. Pons* that well-established interpretations under the FLSA continue to apply for the same sections after their incorporation into the ADEA. Either there was no well-established interpretation on the point at issue, or the interpretation favored the conclusion that specification of employees must take place to effect tolling of limitations.

The authorities do not support utilization of *Lorillard v. Pons* in the manner employed by the majority:

1. In *Girouard v. United States,* 328 U.S. 61, 69–70, 66 S.Ct. 826, 830, 90 L.Ed. 1084 (1946) the contention was made that, following reenactment of legislation, earlier Supreme Court interpretations prior to reenactment established the congressional intent for purposes of the reenacted statute. However, the Supreme Court repudiated the contention:

> We stated in *Helvering v. Hallock,* 309 U.S. 106, 119 [60 S.Ct. 444, 451, 84 L.Ed. 604], that "It would require very persuasive circumstances enveloping Congressional silence to debar this Court from reexamining its own doctrines." It is at best treacherous to find in congressional silence alone the adoption of a controlling rule of law. We do not think

under the circumstances of this legislative history that we can properly place on the shoulders of Congress the burden of the Court's own error. The history of the 1940 Act is at most equivocal. It contains no affirmative recognition of the rule of the *Schwimmer* [*United States v. Schwimmer*, 279 U.S. 644, 49 S.Ct. 448, 73 L.Ed. 889], *Macintosh* [*United States v. Macintosh*, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302] and *Bland* [*United States v. Bland*, 283 U.S. 636, 51 S.Ct. 569, 75 L.Ed. 1319] cases. The silence of Congress and its inaction are as consistent with a desire to leave the problem fluid as they are with an adoption by silence of the rule of those cases.

2. In *Helvering v. Reynolds*, 313 U.S. 428, 431–32, 61 S.Ct. 971, 973, 85 L.Ed. 1348 (1941) the court stated:

We are not dealing here with a situation where the meaning of statutory language is resolved by reference to explicit statements of Congressional purpose. *Maguire v. Commissioner* [313 U.S. 1, 61 S.Ct. 789, 85 L.Ed. 1149], *supra; Helvering v. Campbell* [313 U.S. 15, 61 S.Ct. 798, 85 L.Ed. 1159], *supra*. Here, the Committee Reports on the 1934 Act are wholly silent as to whether a taxpayer has acquired property within the meaning of § 113(a)(5) at a time when he has obtained only a contingent remainder interest. And we need not stop to inquire whether, in absence of the Treasury Regulations under the 1934 Act, the administrative construction of "acquisition" under the earlier Acts was of such a character (*Higgins v. Commissioner*, 312 U.S. 212 [61 S.Ct. 475, 85 L.Ed. 783]) and the prior judicial decisions had such consistency and uniformity that Congressional reenactment of the language in question was an adoption of its previous interpretation, within the rule of such cases as *United States v. Dakota-Montana Oil Co.*, 288 U.S. 459 [53 S.Ct. 435, 77 L.Ed. 893]. That rule is no more than an aid in statutory construction. While it is useful at times in resolving statutory ambiguities, it does not mean that the prior construction has become so embedded in the law that only Congress can effect a change.

3. *Cf. Helvering v. Hallock*, 309 U.S. 106, 119–21, 60 S.Ct. 444, 452, 84 L.Ed. 604 (1940):

Nor does want of specific Congressional repudiations of the *St. Louis Trust* cases [*Helvering v. St. Louis Trust Co.*, 296 U.S. 39, 56 S.Ct. 74, 80 L.Ed. 29] serve as an implied instruction by Congress to us not to reconsider, in the light of new experience, whether those decisions, in conjunction with the *Klein* case [*Klein v. United States*, 283 U.S. 231, 51 S.Ct. 398, 75 L.Ed. 996], make for dissonance of doctrine. It would require very persuasive circumstances enveloping Congressional silence to debar this Court from re-examining its own doctrines. To explain the cause of non-action by Congress when Congress itself sheds no light is to venture into speculative unrealities. Congress may not have had its attention directed to an undesirable decision; and there is no indication that as to the *St. Louis Trust* cases it had, even by any bill that found its way into a committee pigeon-hole. . . . Various considerations of parliamentary tactics and strategy might be suggested as reasons for the inaction of the Treasury and of Congress, but they would only be sufficient to indicate that we walk on quicksand when we try to find in the absence of corrective legislation a controlling legal principle.

4. A distinguished commentator has made a trenchant observation. 2 K. Davis, Administrative Law Treatise, § 7:14, at 67 (2d ed. 1979):

Throughout the twentieth century, the reenactment doctrine has commonly been overstated. The Supreme Court asserted in 1908 that "the reenactment by Congress, without change, of a statute, which had previously received long continued executive construction is an adoption by Congress of such construction." . . .

Such statements are obviously unsound, because the committees or subcommittees of Congress may or may not know of outstanding interpretations when they

are considering reenactment; they do not in fact approve what they know nothing about. Of course, they may in fact both know and approve existing regulations or other interpretations.[52]

5. *Cf.* 2A Sutherland, Statutes and Statutory Construction, § 49.09 at 257 (C.D. Sands 4th ed.1973):

And it has been presumed that when Congress reenacted an earlier federal statute, it knew and approved prior judicial constructions of such act by state courts. The rule is of special importance where administrative rulings and interpretations are under constant observation of the legislature. But it does not apply where there is nothing to indicate that the legislature had its attention directed to the administrative interpretation when a provision was reenacted. Doubt as to the value of the rule has been manifested, moreover, where the extent to which the practical construction was followed and known has not been shown.

If congressional awareness of Supreme Court holdings is not to be assumed, is it proper to assume such awareness of two district court decisions?

Indeed, it is the epitome of irony that the majority rests its conclusion primarily on *Lorillard v. Pons*, 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). For applying the essential teaching of that case to the 1961 amendment of the FLSA compels the result which I have reached, not the contrary. In *Lorillard*, as here, the Supreme Court confronted a situation where the scope of coverage of an existing statutory framework was expanded. In *Lorillard*, methods for recovery of back pay denied employees through age discrimination practices were plugged into the existing FLSA comprehensive statutory pattern. In the instant case, an extended remedy for recovery of back pay denied employees through violation of wage and hour requirements of the FLSA was engrafted upon the existing comprehensive statutory pattern.

In both cases, the existing statutory framework included a well-established procedural rule. In *Lorillard*, the procedural rule was that a jury trial was available. In this case, the procedural rule was that, to toll limitations in a case to recover back pay, the individual employee for whom recovery was sought had to be named in the court papers. In both cases, the new statutory material failed explicitly to spell out that the existing well-established procedural rule was to be carried forward to the new material. In *Lorillard*, the holding was that the procedural rule that a jury trial was available, although not explicitly mentioned, was so integral to the statutory scheme that it should be carried forward. In this case, the right result is likewise to carry forward the integral procedural rule that names must be named. As in *Lorillard*, we are confronted with the task "of discerning congressional intent where the statute provides no express answer." *Id.* at 585, 98 S.Ct. at 872. As in *Helvering v. Reynolds* there are in the legislative history no "explicit statements of Congressional purpose."

*Lorillard* thus is similar to our situation in that it also concerned an extant well-established procedural rule. It is dissimilar in that the numerous pre-existing cases were fully consistent with the well-established procedural rule. Here the two district court cases, assuming they speak to the issue at all (and actually they do not), are inconsistent. The majority, by reading *Lockhart* and *Novinger's* as standing for a proposition which, on analysis, the two cases never considered, much less adopted, have reached a conclusion at war with *Lorillard's* teaching that a uniform existing procedure should be deemed to continue in effect for an expanded statute in the absence of a clear expression of congressional intent that it be discontinued.

The situation here is very like that presented by *States Marine Lines, Inc. v. Shultz*, 498 F.2d 1146, 1155 (4th Cir. 1974).

---

**52.** Davis, at p. 68, goes far to emasculate the reenactment doctrine by writing "Perhaps the aids play a larger role in writing opinions than in making decisions. . . . The aids may usually bolster decisions made on other grounds, . . . ."

The case concerned three interrelated statutory sections dealing with the manner in which government agents are to proceed where goods suspected of having been illegally imported have been seized. Under 19 U.S.C. § 1602, the officer involved is required "to report every such seizure *immediately* to the appropriate customs officer." The customs officer, by 19 U.S.C. § 1603, has the duty "to report such seizure . . . to the United States attorney." The United States attorney, in accordance with 19 U.S.C. § 1604 is obliged "*immediately* to inquire into the facts . . ., and . . forthwith to cause the proper proceedings to be commenced and prosecuted, without delay . . .."

Although § 1603 conspicuously lacked an immediacy command, this Court read it to harmonize with the related sections:

> [W]e do believe that 19 U.S.C. § 1603 must be construed so as to require "immediate" reporting of the seizure to the United States Attorney . . .

Here, too, the several ADEA sections should be harmonized, so that the consistent objective with which the ADEA is pregnant may be attained. The omission of a reference in § 17 to the consideration that "commencement of the action" for statute of limitations tolling purposes means the specifying of the names of the employees on whose behalf claims are asserted should not be regarded as indicative of congressional intent to introduce a disturbing and unfair disharmony. On the contrary, the same reading of "commencement of the action" should be accepted for § 17 as has been clearly established for § 16(b) and § 16(c).

*Determining "the Commencement of the Action" Under the Facts of the Instant Case*

If my analysis were to prevail, it would then become necessary to determine, as to each employee, when, if ever, the Secretary in the present case took the requisite step or steps to toll limitations for purposes of the back pay claims. To do so would require investigation of certain pleading developments following the filing on February 11, 1976 of the complaint which did not name any employee:

1. On April 12, 1976, the Secretary filed interrogatories. Without identifying them as persons for whom back pay was sought, the Secretary listed by name 25 employees, asking information as to (a) birthdates, (b) dates of employment, (c) details as to the position or positions of each and the duties associated with the positions, (d) reasons for the termination of each, and (e) other details relating to their terminations.

2. On April 26, 1976, following an initial pretrial conference, the district judge filed a memorandum and order embodying stipulations made by the parties at the pretrial conference. Those stipulations included:

a. The representation by counsel for the Secretary that 26 persons were involved in the alleged discriminatory practice, and that, while others might be discovered, such a development was not contemplated.

b. "All parties plaintiff and defendant have been correctly designated."

c. "There is no question concerning misjoinder or nonjoinder of the parties."

d. ". . . counsel for the defendant asserts affirmative defenses, namely the Statute of Limitation . . . which will become the subject of a formal motion as required by Local Rule 21 or else those defenses will be deemed to have been abandoned."

3. On June 18, 1976, Gilbarco filed interrogatories, seeking *inter alia* identification of "each and every person known to Plaintiff alleging a claim of age discrimination . . . or on whose behalf Plaintiff seeks to enforce rights by this action."

4. On September 13, 1976, the Secretary answered the interrogatory, listing by name twenty-five individuals, who were exactly the same as those set out in the Secretary's interrogatories of April 12, 1976. The answer also referred, though not by name, to a twenty-sixth individual, a claimant who was not hired by Gilbarco after replying, in December 1975, to an advertisement published by Gilbarco.

Subsequently, it was determined that one of the twenty-five who were named, John J. Robichaux, had resigned on November 12, 1971, but had been rehired on October 4, 1972, and had been continuously employed by Gilbarco since that time. The termination of employment dates of the other twenty-four named employees were as follows:

| | |
|---|---|
| Tony Fiorito | 2/28/73 |
| R. Mueller | 2/28/73 |
| P. J. Sullivan | 2/28/73 |
| Bernard R. Tetreault | 2/28/73 |
| Eugene Tyburski | 2/28/73 |
| James D. Whitlow | 2/28/73 |
| Myron Follett | 3/ 1/73 |
| Fred P. Logan | 3/ 1/73 |
| Richard G. Nadeau | 4/ 1/73 |
| A. L. Ragazzini | 4/ 1/73 |
| Henry C. Moore | 4/30/73 |
| Ursula Mueller | 5/15/73 |
| Joseph I. Benasutti | 5/31/73 |
| Harold L. Harris | 5/31/73 |
| Hosea McCoy | 5/31/73 |
| Robert E. Nix | 5/31/73 |
| E. A. Nordon, Jr. | 5/31/73 (Rehired 2/18/74, final termination 1/24/75) |
| Luther H. Baker | 6/ 1/73 |
| E. O. Beauvais | 6/ 1/73 |
| Edward Bulewich | 6/ 1/73 |
| J. A. Tinsman | 6/ 1/73 |
| William C. Syriac | 7/ 1/73 |
| William B. Fisher | 3/22/74 |
| J. L. Ketchie | 2/28/75 |

The Secretary, with bureaucratic doggedness, has stuck throughout his presentations in this case solely to his proposition that filing of the complaint on February 11, 1976, tolled limitations. He apparently has been determined to prevail on his chosen theory, without regard for a second string to the bow which might save something for those he had a statutory responsibility to represent, in case the first one were to fail. Nevertheless, that second string is evidently available and I should not be disposed to punish the employees for the Secretary's intransigeant attitude.

If my theory were to prevail that naming of names in a court paper would constitute an event which would toll the statute for

§ 17 purposes, by September 13, 1976, at the latest, limitations were tolled for willful claims which accrued subsequent to September 13, 1973, and for other claims which accrued subsequent to September 13, 1974. Thus, the claims to back pay of the following employees are not time-barred:

| | |
|---|---|
| William B. Fisher | (termination date 3/22/74) [53] |
| E. A. Nordon, Jr. | as to any claim associated with his January 24, 1975 termination |
| J. L. Ketchie | (termination date 2/28/75) |

Furthermore, while the pretrial order was not technically a paper filed in court by the Secretary, the stipulations contained in it made it the practical equivalent, especially in view of Gilbarco's joining in stipulations that "all parties plaintiff . . . have been correctly designated" and that "there is no question concerning . . . nonjoinder of the parties." Those stipulations, conjoined with the earlier listing in the Secretary's interrogatories of twenty-five of the employees and the further stipulation that the employees involved totalled 26, sufficed, under the rule which I would adopt, to toll the statute of limitations as of April 26, 1976. Therefore, the claims for back pay of the following additional employees are not time-barred if the violations were willful, again a matter to be determined at trial:

| | Termination Date |
|---|---|
| Henry C. Moore | 4/30/73 |
| Ursula Mueller | 5/15/73 |
| Joseph I. Benasutti | 5/31/73 |
| Harold L. Harris | 5/31/73 |
| Hosea McCoy | 5/31/73 |
| Robert E. Nix | 5/31/73 |
| E. A. Nordon, Jr. | As to any claim associated with his 5/31/73 termination |
| Luther H. Baker | 6/ 1/73 |
| E. O. Beauvais | 6/ 1/73 |
| Edward Bulewich | 6/ 1/73 |
| J. A. Tinsman | 6/ 1/73 |
| William C. Syriac | 7/ 1/73 |

The back pay claims of John J. Robichaux, the employee who never was terminated, to the extent they relate to the peri-

---

**53.** If the violations with respect to Fisher were not willful, a time-bar under the 2 year statute would exist. That would, of course, be a matter to be determined at trial.

od prior to April 26, 1974 (April 26, 1973, if the violations were willful), are time-barred.[54] Otherwise they are not. The claims of the unnamed job applicant are barred by limitations since he has never been named, and more than three years have elapsed since the filing of the complaint, to say nothing of the greater period of time which has passed since the December 1975 asserted act of discrimination.

The remaining back pay claims of the other 10 named employees[55] are, on the theory which I espouse, time-barred even under the three year provisions of § 6 of the Portal-to-Portal Act applicable to willful violations.[56]

|  | Termination Date |
| --- | --- |
| Fred P. Logan | 3/ 1/73 |
| Richard G. Nadeau | 4/ 1/73 |
| A. L. Ragazzini | 4/ 1/73 |

---

**54.** I have not considered the possibility that the Secretary's interrogatories of April 12, 1976 might have tolled limitations. It is manifestly more difficult to assign such effect to a document which, while it named names, did not state that those named were the persons for whom back pay awards were sought. Since no terminations occurred between April 12, 1973 and April 26, 1973 (or between April 12, 1974 and April 26, 1974), the sole effect of a decision that limitations were tolled as of April 12, 1976, rather than as of April 26, 1976, would be a slight lengthening of the period to which the claims of John J. Robichaux, the one employee not terminated, might extend. If, at trial, it were to develop that he has claims of willful violation related to the period April 12, 1973 to April 26, 1973 (or claims of non-willful violation related to the period April 12, 1974 to April 26, 1974), on my theory the district judge would be expected to address the question of whether the interrogatories tolled limitations.

**55.** Termination Date

| Tony Fiorito | 2/28/73 |
| R. Mueller | 2/28/73 |
| P. J. Sullivan | 2/28/73 |
| Bernard T. Tetreault | 2/28/73 |
| Eugene Tyburski | 2/28/73 |
| James D. Whitlow | 2/28/73 |
| Myron Follett | 3/ 1/73 |

**56.** The result should not be viewed as inimicable to the interests of the employees by restricting back pay relief. There really is no restriction, for the result for a § 17 action by the Secretary is exactly the same as it would be for an individual or collective employees' suit under § 16(b). If we assume, nevertheless, that there would be a "restriction", it must be emphasized that the "restriction" would derive from the concern of Congress that employers not be unduly adversely affected by long delays in identification of those employees who have claims, with the attendant probable dissipation of evidence. Indeed, when enacting the ADEA, Congress demonstrated heightened concern of this nature by including a requirement, not present in the FLSA, patterned on the Civil Rights Act of 1964, that individual employees, within much shorter periods, take steps by way of notification of the Secretary, who would, in turn, notify the employer. ADEA § 7(d) which so provides has been explained in terms of a design to insure prompt identification of claims for the employer. *See Powell v. Southwestern Bell Tel. Co.,* 494 F.2d 485, 488 (5th Cir. 1974); *Charlier v. S. C. Johnson & Sons, Inc.,* 556 F.2d 761, 765 (5th Cir. 1977).